## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 00-03837 (JKF) |
| OWENS CORNING, *et al.*, | (Jointly Administered) |
| Debtors. | |
| Owens Corning, *et al.*, | Adv. Pro. No. 02-05829 (JPF) |
| Plaintiffs, | |
| v. | |
| Credit Suisse First Boston, individually and in its capacity as agent, *et al.*, | |
| Defendants. | |
| The Official Representatives of the Bondholders and Trade Creditors of Debtors Owens Corning, *et al.*, | Adv. Pro. No. 06-50122 (JKF) |
| Plaintiffs, | |
| v. | |
| Credit Suisse First Boston, individually and in its capacity as Agent, *et al.* | |
| Bank Defendants, | |
| IPM, Inc., *et al.*, | |
| Affiliate Non-Debtor Defendants. | |

## MEMORANDUM OF LAW OF THE OFFICIAL REPRESENTATIVES OF THE BONDHOLDERS AND TRADE CREDITORS (i) IN OPPOSITION TO THE DEBTOR AND NON-DEBTOR PLAINTIFFS' MOTION TO REFER BANK ADVERSARY ACTION TO THE BANKRUPTCY COURT; AND (ii) IN SUPPORT OF THEIR MOTION TO WITHDRAW REFERENCE OF SUBORDINATION ADVERSARY ACTION (NO. 06-50122 (JFK)) FROM THE BANKRUPTCY COURT

## INTRODUCTION

The Official Representatives of the bondholders and trade creditors (the "Official Representatives"), by and through their undersigned counsel, of debtors Owens Corning Corporation ("Owens Corning" or "OCD") and certain of its subsidiaries (collectively, the "Debtors") respectfully submit this Memorandum of Law: (i) in opposition to the Debtor and Non-Debtor Plaintiffs' Motion to Refer Bank Adversary Action to the Bankruptcy Court (the "Motion to Refer") (Adv. D.I.[1] 61); and (ii) in support of their motion (the "Motion"), pursuant to 28 U.S.C. § 157(d) and Fed. R. Bankr. P. 5011, for an order withdrawing the reference of Adv. Pro. No. 06-50122 captioned "The Official Representatives of the Bondholders and Trade Creditors of Debtors Owens Corning, *et al.,* Plaintiffs, v. Credit Suisse First Boston, individually and in its capacity as Agent, e*t al.*, Bank Defendants, and IPM, Inc., *et al.*, Affiliate Non-Debtor Defendants" (the "Subordination Adversary Action"), commenced by the Official Representatives in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on January 6, 2006, and respectfully state as follows:[2]

## PRELIMINARY STATEMENT

The Debtors filed the Bank Adversary Action with the Bankruptcy Court in October 2002.  (Adv. D.I. 1).  This Court, acting through U.S. District Judge Alfred M. Wolin, thereafter withdrew the reference of the Bank Adversary Action from the

---

[1]      "Adv. D.I." refers to the corresponding entry on the docket maintained by the Bankruptcy Court for Adversary Proceeding No. 02-5829 pending in this Court (the "Bank Adversary Action").

[2]      The Official Representatives do not assert as a grounds for withdrawal that the Subordination Adversary Action is non-core.  Thus, it is submitted that the requirement of Del. Bankr. L.R. 5011-1, that a motion be concurrently filed with the Bankruptcy Court to determine whether the matter or proceeding is core or non-core, is inapplicable.

Bankruptcy Court and stayed its prosecution pending resolution of the substantive

consolidation dispute which this Court, and subsequently the Third Circuit, went on to

decide.  (Adv. D.I. 27 and 44).  The stay of the Bank Adversary Action has now lapsed

and, in light of the Third Circuit's substantive consolidation decision and subsequent

events regarding the Debtors' new proposed plan of reorganization (the "Fifth Amended

Plan") described below, the Official Representatives now seek to take up the Bank

Adversary Action and pursue it to a conclusion.  In aid of doing so, the Official

Representatives filed their Subordination Adversary Action with the Bankruptcy Court on

January 6, 2006 and also filed their amended motion to intervene in the Bank Adversary

Action with this Court on January 20, 2006.

   As the Debtors correctly point out, taken together, the Subordination

Adversary Action and the Bank Adversary Action (collectively, the "Adversary Actions")

both pertain to the same facts and circumstances, and also most of the same

evidentiary record, which surrounded the substantive consolidation dispute.  (*See*

Debtors' Brief[3] at 7).  Further, the goal of the Adversary Actions is to achieve the same

result -- by means of different, yet conventional and long standing legal theories -- that

would have obtained had the Third Circuit sustained this Court's substantive

consolidation ruling.

   The Official Representatives thus fully agree with the Debtors' assertion

that the "facts that give rise to [the Adversary Actions] . . . are well known to this Court"

and that the Adversary Actions "involve the same common, if not identical, facts and

---

[3]  "Debtors' Brief" refers to the Memorandum in Support of Debtor and Non-Debtor
Plaintiffs' Motion to Refer Bank Adversary Action to the Bankruptcy Court, dated February 3,
2006.

questions of law" and should be adjudicated in the same forum. (Debtors' Brief at 7, 13-14). Indeed, the only point on which the Official Representatives here take issue with the Debtors is that this Court's experience with the substantive consolidation matter, and the attendant trial and evidentiary record, make it by far the more appropriate forum to decide the Adversary Actions. Unlike this Court, the Bankruptcy Court effectively has had no occasion to consider any of the relevant facts, circumstances and issues surrounding the Adversary Actions during the entire time since this Court first took them up in 2002. The only reason why the Official Representatives filed the Subordination Adversary Action with the Bankruptcy Court was because, at least for now, it is still subject to the standing order of reference to the Bankruptcy Court which pertains to most other matters in the Owens Corning bankruptcy case. (Bankr. D.I.[4] 3737).

Accordingly, this Court should withdraw the reference of the Subordination Adversary Action and deny the Motion to Refer. If this Court takes these remaining issues regarding the Banks' claims, subject of course to the Court's own scheduling constraints, the Official Representatives believe that this Court can decide these issues comfortably within the time frame set by the Bankruptcy Court for hearings on the Debtors' Fifth Amended Plan.

## PROCEDURAL BACKGROUND

On October 5, 2000, the Debtors filed separate voluntary petitions for relief in the Bankruptcy Court under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (as amended, the "Bankruptcy Code"). The Debtors continue to

---

[4]    "Bankr. D.I." refers to the corresponding entry on the docket of the Bankruptcy Court for the jointly administered bankruptcy cases of the Debtors, Bankruptcy Case No. 00-03837.

manage and operate their business as debtors and debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

On October 23, 2000, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Creditors Committee") and the Official Committee of Asbestos Claimants (the "ACC").  Subsequently, by order dated September 28, 2001, the Bankruptcy Court appointed James J. McMonagle, Esq., as the Legal Representative for Future Claimants (the "Futures Representative"), and on July 16, 2001, the Bankruptcy Court issued an order authorizing and approving the employment and retention of Anderson Kill & Olick, P.C., *nunc pro tunc*, from March 26, 2001, as special counsel to the bondholder and trade creditor constituencies of the Creditors Committee, to the extent that their interests diverge from those of the Creditors Committee as a whole.  It is these bondholders and trade creditors, referred to as the Official Representatives, that commenced the Subordination Adversary Action and who now submit the instant motion.

## A.    Designation of Judge Wolin

On November 27, 2001, pursuant to 28 U.S.C. § 292(b), then-Chief Judge of the United States Court of Appeals for the Third Circuit, the Honorable Edward R. Becker, designated United States District Judge for the District of New Jersey, the Honorable Alfred M. Wolin, to serve in this District for the purpose of administering the Chapter 11 cases filed by certain asbestos producers, including the Debtors.[5]  (Bankr. D.I. 3638).  Chief Judge Becker's designation recited the need to have these Chapter

---

[5]    In his November 27, 2001 directive,  Chief Judge Edward Becker wrote:  "As a significant portion of the asbestos cases in this country are proceeding under the aegis of this litigation, I deem this assignment and consolidation critically important to the administration of justice."  (Bankr. D.I. 3638 at 2-3).

52156                                      - 5 -

11 cases "consolidated before a single judge so that a coordinated plan for management can be developed and implemented." (Bankr. D.I. 3638 ). It further provided that: "It is contemplated that Judge Wolin will assign a portion of these cases to various bankruptcy judges sitting in the District of Delaware so they may assist in moving these matters forward."

Thereafter, on November 29, 2001, the Honorable Sue L. Robinson, Chief United States District Judge for the District of Delaware, entered an order formally assigning to Judge Wolin the Debtors' jointly administered Chapter 11 cases. (Bankr. D.I. 3639).

**B.      Assignment to Judge Fitzgerald and Subsequent Withdrawal of Reference**

By an order entered on December 10, 2001, Judge Wolin, *inter alia*, referred the Chapter 11 cases of these Debtors to U.S. Bankruptcy Judge Judith K. Fitzgerald, sitting by designation in this District, subject to the possible withdrawal of the reference "with respect to specific proceedings or issues as may be required by law or as may from time to time be deemed advisable by the Court . . . ." (Bankr. D.I. 3737 at 3).

Thereafter, on December 23, 2002, Judge Wolin entered a Case Management Order (Bankr. D.I. 6553) that withdrew the reference to the Bankruptcy Court for two discrete matters:

> (i) the adversary proceeding captioned "Owens Corning et al. vs. Credit Suisse First Boston et al.," (Adv. Pro. No. 02-5829) commenced by the Debtors seeking, inter alia, to avoid guarantees executed by certain OCD subsidiaries (the "Subsidiary Guarantees") of OCD's obligations to the Banks under the Credit Facility as fraudulent conveyances (the "Bank Adversary Action"); and

(ii) the Debtors' proposed substantive consolidation motion (the "Substantive Consolidation Motion").[6]  (Bankr. D.I. 6758).

The Case Management Order also provided that issues in the Bank Adversary Action and Substantive Consolidation Motion would be heard at a joint trial and hearing commencing on April 1, 2003.

Pursuant to a schedule set by the Case Management Order, on December 31, 2002, the Official Representatives, known at the time as the Designated Members of the Official Committee of Unsecured Creditors of Owens Corning, filed their Amended Cross-Motion[7] to intervene in the Bank Adversary Action together with their amended proposed complaint.  (Adv. D.I. 18 and 19, respectively).  The Futures Representative and the ACC filed separate motions to intervene in the Bank Adversary Action.  (Adv. D.I. 16 and 17, respectively).

In addition to seeking intervention in each of the Debtors' claims, the Official Representatives, Futures Representative and ACC each proposed to assert additional claims.  Specifically, the Official Representatives' proposed complaint stated claims against certain of the Subsidiary Guarantors for common law and securities fraud based on misrepresentations in Owens Corning's bond prospectuses.  The Futures Representative and ACC proposed complaints that stated claims for fraudulent

---

[6]     On January 17, 2003, the Debtors, along with the Asbestos Committee and the Futures Representative (collectively, the "Plan Proponents"), proposed a plan of reorganization that provided for the substantive consolidation of the estates of the Debtors and certain of their non-debtor affiliates (the "Plan").  In connection with the Plan, the Plan Proponents filed the Substantive Consolidation Motion seeking approval of the substantive consolidation portion of the Plan (Bankr. D.I. No. 6758); the Substantive Consolidation Motion was supported by the Official Representatives and was opposed only by the Banks, which had obtained loan guarantees from certain OCD subsidiaries (the "Subsidiary Guarantors").

[7]     The Official Representatives had filed their Cross-Motion to Intervene and File a Complaint in Intervention on November 7, 2002, prior to the entry of the Case Management Order.  (Adv. Pro. D.I. No. 8).

conveyance and constructive trust in connection with certain transfers of assets from OCD to its subsidiaries IPM, Inc. ("IPM"), and Owens Corning Fiberglas Technology, Inc. ("OCFT").

Judge Wolin never decided these intervention motions. Instead, on motion of the Debtors, Judge Wolin entered several written and oral orders that had the effect of staying proceedings in the Bank Adversary Action until the Substantive Consolidation Motion was decided. (Adv. D.I. 27 and 44).

Following extensive discovery and the negotiation of more than 3,000 detailed stipulations of fact, Judge Wolin conducted an evidentiary hearing on the Substantive Consolidation Motion over a period of 13 days during April and May 2003. The evidentiary record included a trial transcript of more than 2,000 pages and the admission of 205 exhibits and 7,436 pages of deposition transcripts.

Judge Wolin had not rendered a decision on the Substantive Consolidation Motion when proceedings were initiated in October 2003 to recuse him from, among others, the Owens Corning bankruptcy case and the Third Circuit stayed all proceedings in the District Court. In May 2004, Judge Wolin was recused from the Debtors' bankruptcy proceedings, which were reassigned to Senior District Judge John P. Fullam, who ordered further briefing and argument on the Substantive Consolidation Motion.

In a Memorandum and Order dated October 5, 2004, this Court, applying well recognized precedents, granted the Substantive Consolidation Motion. (Bankr. D.I. 12855). In reaching its ruling, this Court made a number of factual determinations and evaluated much of the evidence that is relevant to the Adversary Actions at issue here.

The Bank Group appealed this Court's ruling and, by Order dated August 15, 2005, the Third Circuit reversed this Court's decision, propounding a new legal standard for substantive consolidation. As part of its decision denying substantive consolidation, the Third Circuit made express reference to the Bank Adversary Action. Indeed, the Third Circuit admonished the parties that the issues raised by the Bank Adversary Action should have been litigated before, and perhaps instead of, the substantive consolidation issue. *See In re Owens Corning*, 419 F.3d 195, 215 (3d Cir. 2005).

### C.    The Current Litigations and the Debtors' Fifth Amended Plan

#### *(i)  The Bank Adversary Action*

On December 5, 2005, after Judge Wolin's stay of the Bank Adversary Action had expired, the Official Representatives made demand on the Debtors to (i) prosecute the claims that they had asserted in 2002 in the Bank Adversary Action, and (ii) commence certain additional "derivative" claims against the Banks.

These "derivative" claims, which are now set forth in the Official Representatives' proposed amended complaint in the Bank Adversary Action, seek:  (1) to avoid, as actual and constructive fraudulent conveyances, OCD's transfers (a) to its subsidiary IPM of stockholdings in OCD's foreign operations and funds to invest in those foreign operations, (b) to its subsidiary OCFT of intellectual property and sham royalty payments, and (c) to its subsidiary Integrex of $1.002 billion in debentures and a $360 million note; and (2) to impose a trust, for the benefit of all creditors of OCD, over the aforementioned fraudulently conveyed assets (collectively, the "Additional Derivative Claims").  The facts and circumstances supporting each of the Additional Derivative

Claims were set forth in the original intervention complaints of the Futures Representative and ACC.  (Bankr. D.I. 16 and 17, respectively).

The Debtors did not respond to the request.  Instead, on December 31, 2005, the Debtors filed their Fifth Amended Plan, which, among other things, purports to release all of the claims against the Banks asserted in the Bank Adversary Action and the Subordination Adversary Action.  (Bankr. D.I. 16567 and 16569).  The Fifth Amended Plan, jointly proposed by the Debtors, the ACC and the Futures Representative, is supported by a steering committee of the group of Banks. Significantly, however, and contrary to the Debtors' assertions in their Motion to Refer (Debtors' Brief at 3), it is not supported by either the Official Representatives or by the *Ad Hoc* Committee which has represented that its members hold, in the aggregate, more than one-third of both the outstanding claims held by the Banks and the Bondholders.  The Fifth Amended Plan, therefore, is unconfirmable and certain to generate intense controversy and litigation.

On January 20, 2006, as a result of the Debtors failure to proceed with the prosecution of the claims that they had asserted in the Bank Adversary Action, the Official Representatives filed a motion currently pending in this Court (i) to amend their intervention motion in order to: (A) seek authority to take over from the Debtors the prosecution of the Bank Adversary Action, (B) assert, on the Debtors' behalf, the Additional Derivative Claims for actual and constructive fraudulent conveyance and constructive trust, and (C) seek leave to file their proposed complaint; and (ii) further move for an order pursuant to 11 U.S.C. § 362(d) modifying the automatic stay to the

extent necessary to permit the prosecution of the claims asserted in their proposed complaint.  (Adv. D.I. 56).

### (ii)  The Subordination Adversary Action

Since the filing of the Fifth Amended Plan evidenced the Debtors' intention to capitulate to the Banks, in addition to filing their amended motion to intervene in this Court, the Official Representatives acted to preserve remedies against the Banks that were not part of the initial pleadings in the Bank Adversary Action.  To accomplish this, the Official Representatives filed the Subordination Adversary Action, which, by this Motion, they seek to have consolidated before this Court for disposition with the Bank Adversary Action.  Because this Court has not yet withdrawn the reference to the Subordination Adversary Action, the Official Representatives were forced initially to commence the Subordination Adversary Action in the Bankruptcy Court and then to file this Motion.

Filed on January 6, 2006, the Subordination Adversary Action seeks:  (1) an order equitably subordinating the Banks' claims against OCD to those of the Bondholders and Trade Creditors as well as equitably subordinating the Banks' guarantee claims against certain OCD debtor subsidiaries to the claims of OCD against such subsidiaries, for the benefit of OCD's creditors; (2) an order equitably subordinating certain non-debtor guarantors' claims against OCD to those of the Bondholders and Trade Creditors; (3) an order piercing the corporate veil of OCD's alter ego, non-Debtor affiliates IPM, Owens-Corning Fiberglas Sweden, Inc. and Vytec Corporation, together with an order making each alter egos' assets available to the creditors of OCD; and (4) in the event that the Official Representatives' requested relief of corporate veil piercing is granted with respect to any of OCD's non-debtor

subsidiaries, an order equitably subordinating the Banks' claims against OCD within that merged enterprise to those of the Bondholders and Trade Creditors.

The Official Representatives' equitable subordination claims seek to subordinate the Banks' claims in the Debtors' bankruptcy cases based on the Banks' false representations in certain Owens Corning bond prospectuses that OCD's bond debt would be unsubordinated and rank equally and ratably with OCD's bank debt. The effect of such subordination would be to increase the amount of assets available for recovery by all of OCD's creditors, including the Bondholders and Trade Creditors.

Similarly, the Subordination Adversary Action also seeks to "pierce the corporate veil" to retrieve and make available to OCD's creditors the property of OCD which improperly is in the possession of the non-debtor Subsidiary Guarantors. Virtually all of the facts supporting the Official Representatives' veil piercing claims already have been developed during this Court's hearing on the Substantive Consolidation Motion.

**D.    The Motion to Refer**

On February 3, 2006, the Debtors filed the Motion to Refer seeking an order referring both the Bank Adversary Action and the Official Representative's motion to intervene to the Bankruptcy Court.  (Adv. D.I. 61).

**ARGUMENT**

**I.    JUDICIAL ECONOMY REQUIRES THAT THE ADVERSARY ACTIONS PROCEED TOGETHER BEFORE THIS COURT**

These bankruptcy cases are jointly administered by this Court and the Bankruptcy Court.  Judge Wolin's order referring several bankruptcy matters to Judge Fitzgerald specifically reserved this Court's right to "withdraw the reference made by this

Order with respect to specific proceedings or issues as may be required by law or may from time to time be deemed advisable by the Court to facilitate efficient resolution." (Bankr. D.I. No. 3737 at 3).  Even if it stood alone, the Subordination Adversary Action would present precisely the situation contemplated by this language.  Taken together with the Bank Adversary Action, which it merely augments, the case for deciding both Adversary Actions in this Court is beyond compelling.

After five years of contesting the Banks' claims to seniority, and more than three years after the Debtors filed the Bank Adversary Action against the Banks, which the ACC and Futures Representative also moved to join at the time, the Debtors have now turned a "blind eye" to the obvious infirmities of the Banks' assertions that their unsecured claims against the Debtors' estates are structurally senior to the claims of all other unsecured creditors.  As a consequence, the Debtors want to abandon legitimate objections to the Banks' claims, almost entirely at the expense of the Bondholders and Trade Creditors.  Thus, under the Fifth Amended Plan, (i) the Banks' entitlement to fully compounded post-petition interest and letter of credit and facility fees are all conceded at a cost of more than $650 million, and (ii) all of the avoidance, equitable subordination, veil piercing, and other objections to the Banks' claims which are the subject of the Adversary Actions would be ignored and released.  Filing of the Subordination Adversary Action therefore was necessary in order to protect the interests of the Bondholders and Trade Creditors.

Keeping the Bank Adversary Action in this Court, and withdrawal of the reference of the Subordination Adversary Action, is warranted to maximize judicial efficiency and consistency in reaching prompt resolution of these cases.  The District

Court "may withdraw, in whole or in part, any case or proceeding referred under this section . . . for cause shown."  28 U.S.C. § 157(d); *see also* Fed. R. Bankr. P. 5011. Although the phrase "for cause shown" is not defined in the Bankruptcy Code, the Third Circuit has enumerated five factors that a district court should consider when determining whether "cause" exists for discretionary withdrawal, including (i) promoting uniformity of bankruptcy administration; (ii) reducing forum shopping and confusion; (iii) fostering economic use of debtor/creditor resources; (iv) expediting the bankruptcy process; and (v) timing of the request for withdrawal.  *In re Pruitt*, 910 F.2d 1160, 1168 (3d Cir. 1990) (quotations omitted); *see also Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1101 (2d Cir. 1993) (same); *Hatzel & Buehler, Inc. v. Orange & Rockland Utilities, Inc.*, 107 B.R. 34, 39 (D. Del. 1989) ("Permissive withdrawal for 'cause' includes considerations of . . . judicial economy").  All of these factors strongly favor adjudicating both Adversary Actions in this Court.

Compellingly, courts have recognized that the interests of judicial economy are served by withdrawing the reference where two proceedings before both the Bankruptcy Court and the District Court "involve common questions of fact and law." *In re Enviro-Scope Corp.*, 57 B.R. 1005, 1007 (E.D. Pa. 1985).

**A.    Common Questions Of Fact And Law, As Well As This Court's Familiarity With The Relevant Facts To Be Relied Upon In Both Adversary Actions, Dictate Denial Of The Motion To Withdraw The Bank Adversary Action And Withdrawal Of The Reference Of The Subordination Adversary Action**

The Official Representatives agree with the Debtors that there is an "undisputed overlap of 'core' facts and issues" presented in the Adversary Actions. (Debtors' Brief at 14).  The Official Representatives also agree with the Debtors'

premise that, because of this overlap of core facts and issues, the interests of judicial economy and the avoidance of judicial waste will best be served by one court hearing both actions. *See id.* The Debtors are wrong, however, in suggesting that the Bankruptcy Court is the better forum in which to litigate the Adversary Actions. As the Debtor concedes: "The facts giving rise to the [Adversary Actions] . . . *are well known to this Court.*" (Debtors Brief at 7) (emphasis added). Indeed, this Court, by virtue of its extensive prior involvement and familiarity with, among other things, the factual record established during the Substantive Consolidation Motion, is the forum best able expeditiously to resolve the issues presented in both the Bank Adversary Action and the Subordination Adversary Action. These same facts are not well known at all to the Bankruptcy Court.

For this reason, discretionary withdrawal of the reference with respect to the Subordination Adversary Action and denial of the Motion to Refer are warranted to avoid confusion and to maximize judicial efficiency and consistency in reaching prompt resolution of these cases.

This Court previously withdrew the reference with respect to the Bank Adversary Action, as well as the Debtors' Substantive Consolidation Motion and the estimation of asbestos personal injury claims. As a result of its prior involvement, this Court now is intimately familiar with the extensive factual record that will be substantially relied upon by the parties in connection with the Adversary Actions. Indeed, virtually all of the facts supporting the Official Representatives' claims for fraudulent conveyance, constructive trust, and veil piercing already have been developed during this Court's hearing on the Substantive Consolidation Motion and little additional discovery would be

necessary.[8]  Retaining the Bank Adversary Action and withdrawal of the reference of

the Subordination Adversary Action from the Bankruptcy Court would therefore promote

judicial economy, foster the economical use of the Debtors' resources and promote

uniformity in the administration of the Debtors' bankruptcy cases.

### B.  Consolidation Of The Adversary Actions In This Court Would Accelerate The Ultimate Resolution Of The Debtors' Bankruptcy Cases

Debtors argue that referral of the Bank Adversary Action to the Bankruptcy

Court will hasten confirmation of their Fifth Amended Pan.  (Debtors' Brief at 3-5).

Debtors also represent that "representatives of approximately 85% of the more than $10

billion of pre-petition unsecured claims against Owens Corning support the Fifth

Amended Plan, and are invested in completing the . . . path toward plan confirmation . .

. ." (Debtors' Brief at 3).  Debtors are wrong on both accounts.

The Fifth Amended Plan is *not* supported by either the Official

Representatives or by the *Ad Hoc* Committee which has represented that its members

hold, in the aggregate, more than one-third of the outstanding claims held by both the

Banks and the Bondholders.  The Fifth Amended Plan, therefore, is unconfirmable, and

the Official Representatives are entitled to have their claims heard.  Moreover, because

the "facts giving rise to the [Adversary Actions] . . . *are well known to this Court,*" this

Court is in the best position expeditiously to resolve these claims in order for the

---

[8]      The Official Representatives will require at least some additional discovery on the
underwriting of OCD's bond offerings in connection with their equitable subordination and fraud-
based claims against the Banks who underwrote the OCD bond offerings.  The Official
Representatives attempted, but were unable, to obtain this discovery during the discovery
phase of the Substantive Consolidation Motion.

Debtors' bankruptcy cases to come to a final resolution.  (Debtors' Brief at 7) (emphasis added).

Finally, the Debtors improperly distort statements by counsel for the Official Representatives, J. Andrew Rahl, Jr., during a recent Bankruptcy Court hearing before Judge Fitzgerald, regarding the Official Representatives willingness to resolve "some" issues pertaining to their objections to CSFB's proof of claim during plan confirmation hearings.  (*See* Debtors' Brief at 4; Debtors' Ex.[9] B at 31).  Debtors misconstrue these statements as an acknowledgment by the Official Representatives that *all* claims in the Adversary Actions should be resolved during the course of the plan confirmation hearings in the Bankruptcy Court.  (*See* Debtors' Brief at 4).  Nothing could be further from the truth.

Indeed, each of the recent filings by the Official Representatives, including their amended motion to intervene in the Bank Adversary Action pending in this Court, their filing of the Subordination Adversary Action, and this Motion as well, all directly conflict with such a conclusion.  Moreover, the transcript of the Bankruptcy Court hearing, on its face, indicates that the Official Representatives agreed only that the limited bases for objecting to CSFB's proof of claim initially asserted by the Debtor (*i.e.*, liabilities outstanding on letters of credit, the allowed amount of pre-petition interest, etc.) are proper issues for plan confirmation hearings.  (Debtors' Brief at 31).  The Official Representatives, however, did not, and do not, represent that the claims which they have asserted in the Adversary Actions should be resolved by the Bankruptcy

---

[9]        "Debtors' Ex." refers to the exhibits attached to Debtors' Brief.

Court during plan confirmation hearings.  To the contrary, for the reasons previously stated, this Court is the proper forum to hear such claims.

Accordingly, this Court should deny the Motion to Refer and withdraw the reference of the Subordination Adversary Action.

## D. Del. LR. 7.1.1 Statement

In accordance with Local Rule 7.1.1 of the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware, incorporated by reference into the Local Rules of the Bankruptcy Court pursuant to Del. Bankr. L.R. 1001-1, counsel for Official Representatives state that they have made a reasonable effort to reach agreement with the opposing attorneys on the matters set forth in this Motion.

## <u>CONCLUSION</u>

For the foregoing reasons, the Official Representatives respectfully request that this Court enter an Order substantially in the form attached:  (i) denying the Debtors' Motion to Refer the Bank Adversary Proceeding to the Bankruptcy Court; (ii) granting the Official Representatives' Motion to withdraw the reference of the Subordination Adversary Proceeding from the Bankruptcy Court; and (iii) granting such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated:  February 13, 2006

By:   /s/ Joseph J. bodnar
Francis A. Monaco, Jr. (#2078)
Joseph J. Bodnar (#2512)
MONZACK & MONACO, P.A.
1201 Orange Street, Suite 400
Wilmington, Delaware 19801
Telephone:  302-656-8162

J. Andrew Rahl, Jr.
John B. Berringer
Howard D. Ressler
Mark Weldon
Dennis J. Artese
ANDERSON KILL & OLICK, P.C.
1251 Avenue of the Americas
New York, NY  10020
Telephone:  212-278-1000

Attorneys for Official Representatives of the Bondholders and Trade Creditors of Debtors Owens Corning, *et al.*