## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| OWENS CORNING, *et al.*, | Case No. 00-03837 (JKF) |
| Debtors. | (Jointly Administered) |
| OWENS CORNING, *et al.*, | |
| Plaintiffs, | |
| v. | Adv. Proc. No. 02-5829 (JPF) |
| CREDIT SUISSE FIRST BOSTON, *et al.*, | **Related to Adv. Docket No. 61** |
| Defendants. | |
| OFFICIAL REPRESENTATIVES OF THE BONDHOLDERS AND TRADE CREDITORS OF DEBTORS OWENS CORNING, *et al.*, | Adv. Proc. No. 06-50122 (JKF) |
| Plaintiffs, | **Related to Adv. Docket No. 10** |
| v. | |
| CREDIT SUISSE FIRST BOSTON, *et al.*, | |
| Bank Defendants, | |
| IPM, Inc., *et al.* | |
| Affiliate Non-Debtor Defendants. | |

## DEBTORS' MEMORANDUM OF LAW (1) IN REPLY TO THE OFFICIAL REPRESENTATIVES' OPPOSITION TO MOTION TO REFER BANK ADVERSARY ACTION TO THE BANKRUPTCY COURT AND (2) IN RESPONSE TO MOTION OF THE OFFICIAL REPRESENTATIVES OF THE BONDHOLDERS AND TRADE CREDITORS OF THE DEBTORS TO WITHDRAW THE REFERENCE OF SUBORDINATION ADVERSARY ACTION NO. 06-50122 (JKF) FROM THE BANKRUPTCY COURT

Presently before the District Court are two competing motions to determine the

appropriate forum to resolve the Official Representatives' *de facto* claim objections to the

Banks' recovery under the current plan of reorganization.[1]  The motions concern two adversary actions, the Bank Adversary Action[2] first filed in the Bankruptcy Court but presently pending before (and stayed by) the District Court; and the Subordination Adversary Action, filed recently on January 6, 2006, and presently pending in the Bankruptcy Court.[3]  On February 3, 2006, the Debtors filed a motion and supporting memorandum pursuant to 11 U.S.C. §105(a) to refer the Bank Adversary Action back to the Bankruptcy Court (the "Motion to Refer").  On February 13, 2006, the Official Representatives, who initiated the Subordination Adversary Action, filed a motion to withdraw the reference as to that action, seeking its removal for adjudication to the District Court.  At the same time, the Official Representatives filed their opposition to the Debtors' Motion to Refer.

In sum, the Debtors seek to have both adversary actions heard by the Bankruptcy Court as part of the plan confirmation process already underway, while the Official Representatives seek to have the actions heard by the District Court, separate from the underlying bankruptcy plan confirmation proceedings.[4]  Debtors submit this memorandum in

---

[1]  The procedural background underlying these matters is set out in detail in the Memorandum in Support of Debtor and Non-Debtor Plaintiffs' Motion to Refer Bank Adversary Action to the Bankruptcy Court (Adv. Docket No. 61).

[2]  *Owens Corning, et al. v. Credit Suisse, et al.*, Adv. Proc. No. 02-5829 (JPF).

[3]  *Official Representatives of the Bondholders and Trade Creditors of Debtors Owens Corning, et al. v. Credit Suisse, individually and in its capacity as Agent, et al.*, Adv. Proc. No. 06-50122 (JKF).

[4]  To further consolidate all core proceedings before the Bankruptcy Court as part of a unitary and cost-efficient plan confirmation process, the Debtors have also filed before the District Court a Motion for Order (A) Clarifying that the Reference to the Bankruptcy Court Extends to Voting Procedures Motions or, in the Alternative, (B) Referring any such Motions to the Bankruptcy Court Pursuant to 28 U.S.C. § 157(a) to confirm that the Debtors can seek a final order from the Bankruptcy Court on their Motion to Approve Voting, Solicitation and Notice Procedures, which is on track for confirmation hearings scheduled to commence before the Bankruptcy Court on July 10, 2006.

further support of their Motion to Refer and in response to the Official Representatives' Motion to Withdraw the Reference.

## I.    PRELIMINARY STATEMENT

These motions, and the underlying actions they address, arise at a critical time in the Debtors' bankruptcy proceedings. After more than five years of legal wrangling and litigation, the Debtors are approaching the end of the reorganization process. On December 31, 2005, Debtors and their co-plan proponents filed the Fifth Amended Joint Plan of Reorganization for Owens Corning and Its Affiliated Debtors and Debtors-In-Possession (the "Fifth Amended Plan") and a proposed Disclosure Statement.

This Fifth Amended Plan—which was the product of extensive negotiation—was filed by the Debtors and their plan co-proponents, the Asbestos Claimants Committee (the "ACC") and the Legal Representative for Futures Claimants (the "Futures Representative"). The Fifth Amended Plan was also filed with the support of the steering committee of the debt holders under Owens Corning's primary pre-petition bank credit facility (the "Bank Steering Committee"). Thus, as of today, representatives of holders of approximately 80% of the more than $10 billion of pre-petition unsecured claims against Owens Corning support the Fifth Amended Plan and are invested in completing the fair and orderly path toward plan confirmation. The Bankruptcy Court (Fitzgerald, C.J., sitting by designation) has scheduled a hearing on April 5, 2006, to determine the adequacy of the proposed Disclosure Statement for the Fifth Amended Plan and has scheduled hearings on the confirmation of the Plan itself to begin July 10, 2006.

The Official Representatives oppose the Fifth Amended Plan. To put it bluntly, the litigations the Official Representatives have filed (Subordination Adversary Action) and

seek to re-awaken (Bank Adversary Action) are designed to delay or derail the confirmation process by challenging the *bona fides* of the Banks' claims, notwithstanding the Third Circuit Court of Appeals' substantive consolidation ruling. As explained below, pursuit of these Adversary Actions is about tactics and negotiating leverage, not about the merits.

As the Official Representatives recognize, both Adversary Actions should be heard together, in a single forum.[5] Contrary to the Official Representatives' claims, however, it would not advance any notion of judicial economy or timeliness to have these actions heard by the District Court. The Fifth Amended Plan that the Debtors have filed deals with the treatment of the Banks' claims. Divorcing the resolution of these matters, at the eleventh hour, from the underlying bankruptcy proceedings will merely serve to delay further Debtors' reorganization. It is not mere hyperbole to say that it will do fundamental violence to the prospect for success at the forthcoming confirmation hearing. Moreover, even though the Official Representatives acknowledge that the Bank Adversary Action and the Subordination Adversary Action involve "core" bankruptcy matters, they seek to remove these matters from the Bankruptcy Court's reach. Such a move is contrary to the policies embodied in 28 U.S.C. § 157(b) ("Bankruptcy Judges may hear and determine ... all core proceedings ... and may enter appropriate orders and judgments [with respect thereto].").[6]

---

[5]    Debtors do not concede that the Official Representatives should be permitted to intervene in the Bank Adversary Action and expect to contest the Official Representatives' Motion to Intervene on the merits.

[6]    In furtherance of these policies, Del. Bankr. L. R. 5011-1 requires, when a motion to withdraw the reference is filed, that "[t]he movant shall concurrently file with the Clerk a motion for a determination by the Bankruptcy Court with respect to whether the matter or proceeding is core or non-core." Because the Official Representatives failed to file this motion with their Motion to Withdraw, an omission noted by the Bankruptcy Court at the Omnibus Hearing on February 21, 2006, the Debtors filed a Rule 5011-1 Motion to ensure that the Bankruptcy Court could consider this matter at the next hearing scheduled for March 27, 2006. As indicated in the motion, not only have the Official

The Bankruptcy Code contemplates resolving all such claims in a single, consolidated forum, driving both debtors and creditors toward a speedy reorganization. To foster this process, the Third Circuit and numerous other jurisdictions have declared a strong presumption against withdrawing core matters from the Bankruptcy Court's jurisdiction— especially as confirmation approaches.

In this case, the Official Representatives cannot demonstrate good cause for taking this core litigation from the Bankruptcy Court at this late stage of the chapter 11 proceeding. First, both the Bank Adversary Action and the Subordination Adversary Action attack the allowance of the Banks' claims (the Official Representatives have already filed objections to those claims) and, pursuant to 11 U.S.C. section 1129 of the Bankruptcy Code, the Bankruptcy Court will rule on those objections as part of the confirmation process. Second, many of the background facts necessary to resolve the Official Representatives' claims are already a matter of record. The Bankruptcy Court is already familiar with that record, which was developed for and submitted to the Bankruptcy Court, and is fully capable of applying that record expeditiously. Third, notwithstanding the assertions of the Official Representatives, the Fifth Amended Plan is confirmable under the confirmation standards promulgated in sections 1129(a) and (b) of the Bankruptcy Code. If the Official Representatives disagree, they will have a full and fair opportunity to contest confirmation, put on their evidence before the Bankruptcy Court, and meet their burden of proving why, in the wake of the Third Circuit's substantive consolidation decision, the Banks are not entitled to the

---

Representatives acknowledged that the Subordination Adversary Action constitutes a core proceeding (*see* Memorandum of Law in Support of Motion to Withdraw Reference of Subordination Adversary Action, p.2, n.2 (the "Motion to Withdraw Memorandum"), the Debtors have themselves established in their motion that the Subordination Adversary Action is a core proceeding under, among other provisions, 28 U.S.C. §§ 157(b)(2)(A), (B), (K) and (O).

treatment afforded to them in the Fifth Amended Plan. Removing the Bank Adversary Action and keeping the Subordination Adversary Action will only serve to undermine the effectiveness of the confirmation process and likely will delay the end result, to the detriment of the majority of the asbestos and commercial creditors who support the expeditious confirmation of the Fifth Amended Plan. If the District Court hears these actions in the first instance, a separate appeal to the Third Circuit will almost certainly occur, postponing confirmation until at least that Court rules on the appeal. The better alternative is a single confirmation order with all appeals following in a single proceeding.

## II.    LEGAL ARGUMENT

The Official Representatives acknowledge that the Subordination Adversary Action is a "core proceeding" of a type routinely decided by the Bankruptcy Court. *See* Subordination Adversary Action at ¶ 13; Motion to Withdraw Memorandum at pp. 14-15. Likewise, they have acknowledged that the Bank Adversary Action is also a core proceeding. Third Amended and Restated Complaint in Intervention at ¶ 8 (Adv. Docket No. 56). Moreover, the parties agree that "the interests of judicial economy and the avoidance of judicial waste will best be served by one court hearing [both Adversary Actions]." Motion to Withdraw Memorandum at p. 15. The only basis offered by the Official Representatives for requesting that the District Court resolve these matters in the first instance is that the District Court has familiarity with the substantive consolidation record. This fact alone is not good cause to remove these core bankruptcy adversaries from the Bankruptcy Court, disrupt the confirmation process and create a further piecemeal adjudication of issues expressly dealt with under the Fifth Amended Plan. Moreover, the fraudulent conveyance claims the Official Representatives seek to pursue in the Adversary Actions are not premised solely upon the substantive consolidation factual record, even though they do involve many of the same facts. There inevitably will be

additional development of the factual record, which could be overseen by the Bankruptcy Court. Thus, familiarity with the existing record, without more, does not constitute good cause to remove a core proceeding from the Bankruptcy Court.

**A.    The Adversary Actions are *De Facto* Objections to the Fifth Amended Plan**

The Adversary Actions are *de facto* objections to the treatment of and priority assigned to the Banks' claims under the Fifth Amended Plan.  A prior draft of the Debtors' plan of reorganization substantively consolidated the Debtors' assets.  As has been extensively discussed before the Bankruptcy Court, in the aftermath of the Third Circuit's substantive consolidation ruling, the Debtors—with the support of the ACC and the Futures Representative—negotiated the Fifth Amended Plan in accordance with both the Third Circuit's ruling and the District Court's asbestos claims estimation decision of March 31, 2005.  In short, the Fifth Amended Plan recognizes the validity of the Banks' guaranties from the various Debtors (and Non-Debtors).  In light of the projected valuation of the Debtors' enterprise upon emergence set forth in the Disclosure Statement, this treatment effectively results in the payment of the Banks' claims in full, leaving less assets to satisfy the claims of the bondholders and trade creditors.  Having lost on the substantive consolidation appeal, the Official Representatives are now trying to achieve indirectly the same result by pursuing the Adversary Actions in opposition to the Fifth Amended Plan.

None of the issues in the Adversary Actions can be decided without materially affecting the timing and substance of the confirmation of the Fifth Amended Plan.  Each Adversary Action constitutes a core proceeding, and the underlying issues raised by each Adversary Action are inextricably intertwined with the confirmation of the Fifth Amended Plan. For example, the Subordination Adversary Action seeks, *inter alia*, to equitably subordinate the

Banks' guaranty claims against Owens Corning and the debtor and the non-debtor subsidiary guarantors to the claims of the bondholders and trade creditors at (as well as to intercompany claims against) the parent company, Owens Corning. The economic outcome of this Subordination Adversary Action would be to prefer the claims of Owens Corning's bondholders and trade creditors over and above the claims of the Banks, notwithstanding the force and logic of the Third Circuit's substantive consolidation ruling. Nevertheless, sorting out the relative *bona fides* and priorities of different creditors' competing claims against various Debtor entities is a core bankruptcy determination for the Bankruptcy Court to make in the first instance, under 28 U.S.C. §§ 157(b)(2)(A), (B), (L) and (O), the case law applying those core proceeding provisions, and common sense.[7]

Similarly, the Bank Adversary Action essentially seeks to avoid (on behalf of the Debtors) the Banks' guaranties (and intercompany transfers) under fraudulent transfer theories and to reach the assets of the Debtors' affiliates and subsidiaries that had dealings with the Banks under an alter ego theory so that the assets of the various guarantors can be pooled together and distributed to the benefit of Owens Corning's bondholders and other unsecured commercial creditors to the detriment of the Banks, again notwithstanding the Third Circuit's substantive consolidation decision. This is yet another request to reorder the contractual entitlements and priorities of distribution of the Banks and the other competing creditors established in the Fifth

---

[7]    *In re Paolella & Sons, Inc.*, 85 B.R. 965, 969 (Bankr. E.D. Penn. 1998) ("Since equitable subordination [claims] … are based upon express code provisions, they are claims 'arising under title 11.'"). Equitable subordination claims are core, because resolution of such claims "affects both the size as well as the priority of claims." Id.; *see also In re Insilco Techs, Inc.*, 330 B.R. 512, 521 (Bankr. D. Del. 2005) (claims for equitable subordination under § 510(c) are core under 28 U.S.C. § 157(b)(2)(K) and (O)); *In re Paolella*, 85 B.R. at 969 (string citing cases that hold that claims under § 510(c) are core and stating that "a court may easily conclude" that proceedings under § 510(c) "fall within the catch-all provisions of 28 U.S.C. § 157(b)(2)(A) and (O)").

Amended Plan pursuant to the Bankruptcy Code. This intercreditor claims allowance and treatment issue is clearly a plan confirmation issue. It is also clearly within the province of the Bankruptcy Court to determine as a core bankruptcy proceeding.[8]

In sum, because the issues raised in the Adversary Actions are *de facto* plan confirmation objections, and because the Adversary Actions themselves are core proceedings, they should be decided in the context of the plan confirmation process currently underway before the Bankruptcy Court.

**B.    The Official Representatives Fail to Sustain Their Legal Burden for Withdrawal of the Reference to the Bankruptcy Court**

28 U.S.C. § 157(d) provides that the District Court may withdraw, in whole or in part, any case or proceeding referred to the Bankruptcy Court "for cause shown." However, courts have long recognized a strong presumption that "Congress intended to have bankruptcy proceedings adjudicated in the bankruptcy court," *Harley Hotels, Inc. v. Rain's Int'l. Ltd.*, 57 B.R. 773, 783 (M.D. Pa. 1985), and to utilize the bankruptcy judge's knowledge and expertise in bankruptcy law matters to the fullest extent possible. *In re Onyx Motor Car Corp.*, 116 B.R. 89, 91 (S.D. Ohio 1990); *Allard v. Benjamin*, 49 B.R. 900, 912 (Bankr. E.D. Mich. 1985). Accordingly, courts have been cautious in applying section 157(d) so that the exception does not

---

[8]    Title 28 of the United States Code § 157(b)(2) explicitly states that fraudulent transfer, the Debtors' counterclaims against its creditors and actions to adjust the debtor-creditor relationship are core:

(2) Core proceedings include, but are not limited to—
    (A)  matters concerning the administration of the estate;
    (C)  counterclaims by the estate against persons filing claims against the estate;
    (F)  proceedings to determine, avoid, or recover preferences;
    (H)  proceedings to determine, avoid, or recover fraudulent conveyances;
    (O)  other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship ....

28 U.S.C. § 157(b)(2).

swallow the rule. *United States v. Kaplan*, 146 B.R. 500, 502-03 (D. Mass. 1992). *See In re*

*Parklane/Atlanta Joint Venture*, 927 F.2d 532, 536 (11th Cir. 1991); *In re Pruitt*, 910 F.2d 1160,

1168 (3d Cir. 1990); *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 998 (5th Cir.

1985). Indeed, withdrawal of the reference, especially permissive withdrawal, is rarely granted.

*See Official Committee of Asbestos Claimants v. G-I Holdings, Inc.*, 295 B.R. 211, 216 (D. N.J.

2003) ("District courts, however, rarely invoke this supervisory device.").

      While permissive withdrawal of the reference is subject to the District Court's

discretion, the Third Circuit has made clear that such discretion must be exercised with restraint:

> [I]t is evident that although Congress intended to avoid the
> jurisdictional problems evinced by *Marathon*, it did not intend for
> the indiscriminate withdrawal of the reference from the bankruptcy
> courts. Conversely, Congress intended to develop a means to
> reduce the caseload of the district courts, to create a specialized
> court to handle core bankruptcy proceedings efficiently and to
> preserve the specialized authority of the Article I bankruptcy
> judges over core bankruptcy proceedings while protecting the
> district courts' supervisory powers.

*In re Pruitt*, 910 F.2d at 1170 (concurring opinion). *Accord, FMG, Inc. v. Western Development*

*Corp. (In re FMG, Inc.)*, 1991 WL 247595, at \*2 (N.D. Ill. 1991) (attached hereto as Exhibit A)

("Congress expressed its strong desire that bankruptcy cases be decided by those who are most

capable in terms of knowledge and experience."). *See also, In re Corporacion de Servicios*

*Medico Hospitalarios de Fajardo*, 227 B.R. 763, 765 (D. P.R. 1998) (acknowledging that

permissive withdrawal of the reference of bankruptcy cases and proceedings has been recognized

as a narrow exception to the general rule that bankruptcy proceedings should be adjudicated in

the bankruptcy courts).

      The requirement to show cause "creates 'a presumption that Congress intended to

have bankruptcy proceedings adjudicated in bankruptcy court unless rebutted by a contravening

policy.'" *See Hatzel & Buehler v. Cent. Hudson Gas & Elec.*, 106 B.R. 367, 371 (D. Del. 1989)

(quoting *In re DeLorean Co.*, 49 B.R. 900, 912 (Bankr. E.D. Mich. 1985)); *In re Ponce Marine Farm, Inc.*, 172 B.R. 722, 724-25 (D. P.R. 1994). The Third Circuit has specifically recognized that a district court asked to direct permissive withdrawal of the reference should consider "the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process." *In re Pruitt*, 910 F.2d at 1168. These factors are not exhaustive; they are only "minimum standards." *Id.*; *NDEP Corp. v. Handl-It, Inc. (In re NDEP Corp.)*, 203 B.R. 905, 908 (D. Del. 1996).

Maintaining jurisdiction in the Bankruptcy Court is especially favored when, as here, the issues to be tried are directly related to matters dealt with in a plan undergoing the confirmation process. *In re American Capital Equipment, LLC*, 325 B.R. 372, 378-79 (W.D. Pa. 2005).[9] The *American Capital* court succinctly explained the rationale for this holding:

> The bankruptcy judge is uniquely qualified to determine when, and if, that plan may be confirmed, and to manage the issues raised in the adversary proceeding at the appropriate time to arrive at the most expeditious, and economical, resolution of the case. Withdrawing the reference, and having this court proceed to resolve the legal issues raised in the adversary proceeding only to subsequently discover that the proposed plan has not been confirmed would waste judicial, and debtor, resources.

*Id.* at 379.

---

[9]    In *American Capital*, the debtor's insurers filed an adversary proceeding prior to plan confirmation, claiming that the debtor breached its insurance contract by negotiating a consensual plan of reorganization with certain asbestos claimants. The proceeds of the insurance policies were the subject of the adversary proceeding and were a main asset to be distributed under the plan. Finding that each of the factors supported denial of withdrawal of the reference, the court specifically found that the issues to be decided in the adversary proceeding were so interwoven with the issues related to the plan confirmation that allowing the bankruptcy court to administer the adversary proceeding would promote uniformity, both substantive and administrative, in the bankruptcy administration.

Removal of the Subordination Adversary Action or retention of the Bank Adversary Action will not further "the goals of promoting uniformity in bankruptcy administration, reducing forum shopping and confusion, fostering the economical use of the debtors' and creditors' resources, and expediting the bankruptcy process." Rather, the opposite will be true.

C.    **Withdrawing the Subordination Action and Retaining the Bank Adversary Action Will Disrupt and Delay the Confirmation Process Solely for the Purpose of Providing Negotiating Leverage to the Official Representatives**

Many courts have found that judicial economy is best served by allowing the Bankruptcy Court to adjudicate issues that have significant implications for the estate of the debtor. *In re Formica, Inc.*, 305 B.R. 147, 151 (S.D.N.Y. 2004). The so-called judicial efficiency concerns advanced by the Official Representatives overstate the benefits and understate the disadvantages of proceeding before the District Court. These two litigations are essentially objections to the treatment of the Bank claims under the Fifth Amended Plan. If the objections raised by the Official Representatives are considered as part of the confirmation process, the Bankruptcy Court will resolve these issues and determine whether the treatment of the bank debt claims under the Fifth Amended Plan is fair and equitable. This is not the same process as trying each and every cause of action to ultimate decision as would be required in the District Court. Rather, this would be a decision made on an extensive factual record concerning whether the Adversary Actions have, as the Debtors contend, little or no chance of modifying the distributions due the Banks as specified in the Fifth Amended Plan. The Debtors will demonstrate that the low chance of success of the Adversary Actions justifies the Fifth Amended Plan treatment of the bank debt and that it satisfies the standards of section 1129 of the Bankruptcy Code that the Plan is fair and equitable to any rejecting class. The Official

Representatives and other parties will have a full and fair opportunity to object to the Banks' recovery under the Fifth Amended Plan and to sustain their burden of proving that the Plan is unfair to creditors based on the merits of the Adversary Actions.

Proceeding in this manner before the Bankruptcy Court gives proper deference to the key goal of chapter 11—resolution of critical issues through an integrated plan confirmation process. This is particularly true given the facts of this case, where the parties have a five-plus year history of moving toward emergence from chapter 11 and the Official Representatives have literally had years to commence this litigation. There are no new material facts alleged by the Official Representatives and, therefore, the Subordination Adversary Action could have been filed and advanced by them years ago. It would be inequitable to the Debtors and the other creditors of this estate to permit the Official Representatives to sleep on their rights and then move forward with litigation only after the filing of the Fifth Amended Plan, with which they do not agree.

Permitting the Official Representatives to transfer the focus from all plan confirmation issues to a single "favored" objection disrupts the confirmation process to the detriment of the bankruptcy estate and competing creditors. The Debtors respectfully submit that given the facts of this case, these matters should instead proceed as part of the confirmation process and on the timetable established by the Bankruptcy Court.

Previously in these chapter 11 cases, various parties sought to proceed with their own "favored" causes of action "on behalf of" the estate. Commercial creditors wanted to sue asbestos law firms, various parties wanted to sue officers and directors, non-bank creditors wanted to expand and pursue the Bank Adversary Action and the Banks wished to proceed against Owens Corning on a "constructive trust" theory. The Debtors argued successfully that

proceeding to confirmation should be the focus and that such separate litigation inhibited the confirmation process, was designed for negotiating leverage and was unlikely to provide any material benefit.  To date, none of these adversary proceedings has been permitted to advance by the Bankruptcy Court , and the focus has remained on the plan confirmation process.[10]

The Debtors continue to believe no one will be well served by another costly round of side litigation, which will undoubtedly be followed by yet another separate appeal prior to testing the issues through the plan confirmation process—when plan confirmation will yield a single, global appeal.[11]

---

[10]    The following list of orders documents the ongoing stays of the Adversary Actions (Adv. Proc. No. 02-05819 (JFK), *et al.*):

- 1/13/03    Order Staying Adversary Actions (Adv. Docket No. 8);
- 1/27/03    Supplemental Order Staying Adversary Actions (Adv. Docket No. 10);
- 5/12/03    Order Further Extending the Stay of the Adversary Actions (Adv. Docket No. 14);
- 12/12/04    Order Imposing/Extending Stay of Adversary Actions (Adv. Docket No. 22);
- 2/25/05    Order Imposing/Extending Stay of Adversary Actions (Adv. Docket No. 28);
- 8/23/05    Order Imposing/Extending Stay of Adversary Actions (Adv. Docket No. 34);
- 2/15/06    Order Extending Stay of Adversary Actions (Adv. Docket No. 39);

In addition, the *Credit Suisse v. Owens Corning and Law Firm Does 1 through 20* (the "Constructive Trust Action") (Adv. Proc. No. 03-56919) has been dismissed in accordance with a June 23, 2004, Stipulation and Order Dismissing Adversary Proceeding (Adv. Docket No. 23).

[11]    Contrary to the Official Representatives' contentions, while the issues at confirmation involve the same transactions and behavior as alleged in the Adversary Actions, the inquiry at confirmation will not be to adjudicate each transaction, but to assess whether the treatment of the bank debt claims under the Fifth Amended Plan is permissible under the Bankruptcy Code.  It will not disrupt or delay confirmation, as would the separate track litigation of the Adversary Actions in the District Court.  For this reason alone, the District Court should not disturb the presumption that core proceedings should be resolved in the Bankruptcy Court.

**D.    Withdrawing the Subordination Adversary Action and Retaining the Bank Adversary Action Will Not Foster the Economic Use of the Debtors' and Creditors' Resources**

Aside from the many problems, such as judicial inefficiency and risk of inconsistent holdings, associated with adjudicating the Adversary Actions separate from the confirmation hearing, litigating the Adversary Actions in the District Court would simply waste the Debtors' assets. The Court may, and should, consider the economical use of the Debtors' resources. *See, e.g., In re NDEP Corp.*, 203 B.R. at 913 (noting that fostering economical use of debtors' and creditors' resources is one factor to consider in weighing whether withdrawal is appropriate). The withdrawal of the Subordination Adversary Action and retention of the Bank Adversary Action in the District Court is clearly inconsistent with the economical use of resources. The parties will be required to litigate the Adversary Actions and the confirmation proceeding on parallel tracks in different courts just to stay on track.

The issues and facts underlying the Adversary Actions are complex and will require the Debtors, opposing parties and the Court to expend considerable resources and time. The additional resources of both employees and professionals required to adjudicate the Adversary Actions and pursue plan confirmation simultaneously will tax severely the ability of each party to participate. Moreover, the Debtors are paying for the expenses of most of the parties to the litigation. Designating the Bankruptcy Court as the forum for consideration of these issues will not only conserve estate resources, but also will ensure resolution in a more orderly and efficient manner.

E.    **The Bankruptcy Process Will Not Be Expedited by Withdrawing the Subordination Adversary Action and Retaining the Bank Adversary Action**

The Official Representatives assert, without any basis in law or logic, that the District Court "is best able to expeditiously resolve the issues presented in the [Adversary Actions] by virtue of its extensive prior involvement and familiarity with, among other things, the factual record established during the Substantive Consolidation Motion." *See* Motion to Withdraw Memorandum at p. 15. The Official Representatives offer no evidence to support their sweeping statement. It is simply based on a presumption that the bankruptcy process would somehow be expedited by dual-track litigation instead of an assessment of the merits of the litigation within the confirmation process.

As noted above, many of the fraudulent transfer and equitable subordination issues to be addressed in the Adversary Actions were not addressed in the substantive consolidation trial. Moreover, the District Court, by virtue of the unusual procedural posture in this matter, did not have the opportunity to view the witnesses and judge their credibility. Therefore, the Debtors respectfully submit that the District Court is in no better position than the Bankruptcy Court to consider the relevant portions of the existing record that may be pertinent to the issues raised by the Adversary Actions. The benefit of the District Court's prior review of the record is far outweighed by bankruptcy policy favoring the confirmation process and the economic efficiencies inherent in having these issues considered simultaneously as part of the confirmation process, under the auspices of the Bankruptcy Judge who is familiar with all of the relevant facts, circumstances and litigation tactics that accompany confirmation proceedings.

The Official Representatives also contend that because, in their view, the Fifth Amended Plan is not confirmable, they are entitled to have their claims tried before confirmation

proceedings begin.[12] This argument is based upon a false premise. The Fifth Amended Plan is confirmable under the well-established confirmation, and so-called "cram down" provisions, enumerated in sections 1129(a) and (b) of the Bankruptcy Code. As stated in the Debtors' Memorandum in Support of the Motion to Refer, as of today, representatives of holders of approximately 80% of the more than $10 billion of pre-petition unsecured claims against Owens Corning support the Fifth Amended Plan. The Official Representatives acknowledge that the ACC and the Futures Representative are co-proponents of the Fifth Amended Plan. As the District Court has determined, these constituents alone comprise creditors whose claims against the estate total approximately $7 billion. The Fifth Amended Plan is also supported by the Bank Steering Committee, which represents approximately half of the bank debt. Furthermore, it is important to note that this is just *preliminary* support for the Fifth Amended Plan. The Debtors have not even begun formally to solicit votes, and it is pure speculation for the Official Representatives to assert what the actual vote will be. Even if the Bond and Bank classes were to vote against the Fifth Amended Plan, the Bankruptcy Court can confirm the Plan under the "cram down" provisions of section 1129(b) of the Bankruptcy Code.

While the Official Representatives claim that neither they, nor the Ad Hoc Committee, support the Fifth Amended Plan, their lack of support does not impair the confirmability of the Plan as a matter of law or fact.[13] First, because the Banks are deemed to be

---

[12]    In support of their claim, the Official Representatives disingenuously quote the Debtors' Memorandum in Support of the Motion to Refer the Bank Adversary Action to the Bankruptcy Court out of context, implying that the Debtors have represented that the Official Representatives and the Ad Hoc Committee have supported the Fifth Amended Plan.

[13]    In any event, these hold-up threats are just that—threats. At this time, prior to Disclosure Statement approval, solicitation and voting, it is easy for any party to posture as to its voting intentions, as there are no consequences to any such assertion.

unimpaired (i.e., paid in full under the 1997 Credit Agreement) under the Fifth Amended Plan, they "are conclusively presumed to have accepted the plan" under section 1126(f) of the Bankruptcy Code. Second, the Bankruptcy Code anticipates situations such as in this case, where the interests of the various creditors are so divergent and the underlying facts and issues are so complex that it is not possible for the Debtors to obtain consent to their plan from a majority of creditors in every class.[14] In such situations, the Bankruptcy Code allows the Debtors to invoke the "cram down" provisions of section 1129(b) to confirm a plan of reorganization over the dissent of individual classes of impaired creditors. The Fifth Amended Plan, with the support of the ACC and the Futures Representative, is structured in a manner that can—if necessary—be "crammed down" upon the class of creditors purportedly represented by the Official Representatives. As important, if the Official Representatives disagree, they will have a full opportunity to present their objections to the Bankruptcy Court at the plan confirmation hearings, where all of these issues should be joined.

Judge Fitzgerald recently voiced her preliminary view on this subject:

> I don't know whether it will be confirmed, but at least facially, it looks as though it is confirmable ... at least from a first blush, first read, prima facie level it looks as though this plan can be confirmed. So, I think the debtor has done what the Court has ordered and what its fiduciary obligations are to all constituents. I do want the debtor to continue to negotiate with the bonds because I think that's an important aspect of this case, and perhaps there is still some adjustment that can be made that will get the bonds onboard [sic].

---

[14]    Judge Fitzgerald acknowledged this at the January 30th Omnibus Hearing:

> The debtor can't go out to every constituent in the case and invite them to participate in a case. That's not what the Code's all about. The debtor is required to negotiate in this instance with the Future Claim Rep. and the Committees to try to get together a plan that's consensual not with every creditor. That would be impossible in a case like this.  Jan. 30, 2006, Hearing Transcript at p. 36.

Jan. 30, 2006, Hearing Transcript at p. 42. Considering the fact that the Fifth Amended Plan was developed in accordance with both the District Court's estimation of the Debtors' asbestos liabilities and the Third Circuit's substantive consolidation ruling, it can easily satisfy the "fair and equitable" test, but that is an issue that the Bankruptcy Court, upon notice to creditors, will decide.

## III.   CONCLUSION

For these reasons, the Debtors respectfully request that the Court deny the Motion to Withdraw the Reference, grant the Debtor's Motion to Refer so that both of the Adversary Actions are before the Bankruptcy Court and grant the Debtors such further relief as the Court deems just and proper.

Date:   February 23, 2006          Respectfully submitted,

**SAUL EWING LLP**

By:

Norman L. Pernick (No. 2290)
Jeremy W. Ryan (No. 4057)
222 Delaware Ave., Suite 1200
P.O. Box 1266
Wilmington, DE 19899
Telephone: 302-421-6800

-and-

Charles O. Monk, II
Jay A. Shulman
500 E. Pratt Street, 8th Floor
Baltimore, MD 21202
Telephone: 410-332-8600

Counsel for Owens Corning, *et al.*

SIDLEY AUSTIN LLP
James F. Conlan
Larry J. Nyhan
Jeffrey C. Steen
One South Dearborn Street
Chicago, IL 60603
Telephone: 312-853-7000

-and-

Guy S. Neal
1501 K Street, N.W.
Washington, D.C. 20005
Telephone: 202-736-8000

Co-Counsel for Owens Corning, *et al.*

# EXHIBIT A

Westlaw.

1991 WL 247595
1991 WL 247595 (N.D.Ill.)
(Cite as: 1991 WL 247595 (N.D.Ill.))

**H**
Only the Westlaw citation is currently available.

United States District Court, N.D. Illinois, Eastern
Division.

In re FMG, INC., a/k/a 49th Street Galleria, Inc.,
Debtor.
FMG, INC., Plaintiff,
v.
WESTERN DEVELOPMENT CORPORATION,
Kan Am USA 1X Limited Partnership, Kan Am USA
X Limited Partnership, Franklin Mills Associates
Limited Partnership, Western
Franklin Mills Corporation, Sunrise Mills Limited
Partnership, Western Sawgrass
Mills Corporation, Gurnee Properties Associates
Limited Partnership, Grand
Avenue Properties, Inc., and Herbert S. Miller, an
individual, Defendants.

**No. 91 C 6018.**

Nov. 14, 1991.

*MEMORANDUM OPINION*

KOCORAS, District Judge:

*1 This matter is before the Court on plaintiff-
Debtor's motion for withdrawal of the reference to
the bankruptcy court of its bankruptcy case. In the
alternative, plaintiff-Debtor requests that we stay the
bankruptcy proceedings until we hear its adversary
proceeding now before this Court. For the following
reasons, we deny Debtor's motion.

BACKGROUND

The plaintiff-Debtor, FMG, Inc. ("FMG"), filed a
voluntary petition under Chapter 11 of the United
States Bankruptcy Code on September 3, 1991. On
September 4, 1991, FMG filed an adversary action
against a number of defendants, ("Defendants").
Defendants own and operate a number of shopping
malls. In its action, FMG raises the following
claims: (1) breach of contract; (2) breach of
fiduciary duty; and (3) defamation. FMG has

demanded a jury trial for these claims.

In response to the adversary action, Defendants filed
a motion in this Court to withdraw the reference to
the bankruptcy court. FMG did not oppose the
motion. On October 25, 1991, we concluded that
cause existed to withdraw the reference and granted
defendants' motion.

FMG has now filed a motion to withdraw the
reference of the entire bankruptcy case. FMG claims
that the validity of a lease involving space in the
Gurnee Mills Mall is "central to the Adversary
Action." Additionally, FMG asserts that there are
two matters currently before the bankruptcy judge
that require "litigation of the validity of the Gurnee
Mills Mall lease, with attendant findings of fact."
However, one such matter, Defendants' motion to
transfer venue, has been withdrawn. Accordingly,
we do not address FMG's arguments relative to this
motion. The other matter involves FMG's obligation
to either assume or reject any unexpired leases
pursuant to 11 U.S.C.A. § 365(a) (West Supp.1991).
In order to assume the Gurnee Mills Mall lease, FMG
must establish its validity.

FMG contends that these circumstances present
sufficient "cause" within the meaning of 28 U.S.C.A.
§ 157(d) to withdraw the bankruptcy case. FMG
argues that without withdrawal it will have to prove
the validity of the lease in two forums. Such a
result, FMG urges, is improper because it would: (1)
cause duplicative litigation, (2) risk inconsistent
results, (3) hamper judicial economy, and (4) deplete
the parties' assets. Furthermore, FMG asserts that
the bankruptcy court's findings regarding its ability to
assume the Gurnee Mills Mall lease may compromise
its right to a jury trial in its adversary action.
Therefore, FMG contends that cause to withdraw the
reference of its bankruptcy case exists.

In the alternative, FMG requests this Court to stay
the bankruptcy proceedings until we hear the
adversary action. We will address both of these
suggestions in turn.

DISCUSSION
A. *Withdrawal of Reference*

A motion seeking a withdrawal of an entire
bankruptcy case, as opposed to merely a proceeding

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

1991 WL 247595
1991 WL 247595 (N.D.Ill.)
(Cite as: 1991 WL 247595 (N.D.Ill.))

within the case, is an extreme request. Indeed, neither the parties nor this Court has uncovered any reported opinion withdrawing the reference of a bankruptcy case to the bankruptcy court. Section 157(d) of the United States Code, however, authorizes such a withdrawal, and we must therefore address FMG's request. *See* 28 U.S.C.A. § 157(d) (West Supp.1991) (stating that "district court may withdraw, in whole or in part, any case or proceeding referred" to a bankruptcy court).

*2 Section 157 authorizes withdrawal only if "cause" exists. *Id.* Before defining "cause," it is important to understand why section 157(d) makes such a requirement. Bankruptcy judges are deemed to be "specialists in [a] highly complex field of law." *In Re Onyx Motor Car Corp.,* 116 Bankr. 89, 91 (S.D.Ohio 1990). Accordingly, by enacting the Bankruptcy Act, Congress expressed its strong desire that bankruptcy cases be decided by those who are most capable in terms of knowledge and experience. *See id.* (finding that it was not Congress' intention that § 157(d) be used as "an escape hatch through which most bankruptcy matters [would] be removed to the District Court") (citing 100 Cong.Rec. H1850). As such, courts have recognized a strong presumption that "Congress intended to have bankruptcy proceedings adjudicated in the bankruptcy court." *Harley Hotels, Inc. v. Rain's Int'l, Ltd.,* 57 Bankr. 773, 783 (M.D.Pa.1985).

A party may overcome this presumption by demonstrating that sufficient cause exists to withdraw the reference. Sufficient cause exists where there is "an overriding interest based on a finding by the court that the withdrawal of reference is essential to preserve a higher interest than that recognized by Congress and is narrowly tailored to serve that interest." *Id.; In re De Lorean Motor Co.,* 49 Bankr. 900, 912 (Brktcy.E.D.Mich.1985) (emphasis added). In applying this standard, courts have delineated a number of potential "higher interests."

In determining whether a higher interest is at stake, courts must consider whether withdrawal will: (1) promote judicial economy, including whether a party has requested a jury trial, (2) conserve the debtor and/or creditors resources; (3) reduce forum shopping and confusion; (4) expedite the bankruptcy process; and (5) promote uniformity in bankruptcy administration. *See Holland America Insur. Co. v. Succession of Roy,* 777 F.2d 992 (5th Cir.1985); *In Re Onyx Motor Car Corp.,* 116 Bankr. at 91.

Applying these principles, we conclude that FMG

has not presented sufficient cause to withdraw the reference. First and foremost, we note that withdrawal of the entire bankruptcy case would not be a "narrowly tailored" means of relief. FMG's basis for withdrawal is that the adversary proceeding and the Chapter 11 case having the same legal issue involved: the validity of its Gurnee Mills Mall lease. While we concede that this is true, it is equally clear that the bankruptcy case involves many more complex and broader issues than those presented in the adversary action. FMG's estate boasts of assets totaling over ten million dollars, unsecured liabilities alone in excess of nine million dollars, and over 115 creditors. To withdraw the reference of all bankruptcy matters, core and noncore, related to this large estate would constitute an over-inclusive maneuver on our part, not a narrowly tailored measure of relief.

We also conclude that no "higher interest," sufficient to constitute cause under section 157(d), would be served by withdrawing the reference here. Because of the estate's size and complex matters involved, we believe that withdrawal would potentially hinder judicial economy, promote confusion, and cause delay that could ultimately deplete the parties' resources. *See In Re Onyx Motor Car Corp.,* 116 Bankr. at 91. Furthermore, permitting withdrawal would encourage forum shopping by encouraging a debtor, who has already had an adversary action removed to District Court, to seek a withdrawal of its entire case when it perceives an unfavorable result from the bankruptcy court regarding an issue common to both its bankruptcy case and its adversary proceeding. Thus, principles of sound judicial administration militate against withdrawal of the reference, and we thereby refuse to do so.

*3 FMG's contentions that cause exists to withdraw the reference must fail. While we acknowledge that there is some risk of inconsistent decision-making, such inconsistencies can be remedied through the appellate process. Additionally, FMG has merely speculated that it may receive a jury determination regarding its ability to assume the Gurnee Mills Mall lease. FMG's entitlement to a jury trial regarding this core issue is far from clear. *See Harley Hotels,* 57 Bankr. at 784 (finding § 365(a) motion to assume unexpired contract to be core proceeding); *see also In re Lion Country Safari, Inc.,* 124 Bankr. 566, 570 n. 8 & 573, (Brktcy.C.D.Calif.1991) (highlighting the uncertainty among federal courts regarding the right to a jury trial in the bankruptcy court, especially where Debtor has voluntarily subjected itself to the bankruptcy court's equitable jurisdiction).

1991 WL 247595
1991 WL 247595 (N.D.Ill.)
(Cite as: 1991 WL 247595 (N.D.Ill.))

Therefore, we hold that there is no sufficient basis for withdrawing FMG's bankruptcy case.

### B. *Stay of Bankruptcy Proceedings*

FMG's alternative request is that we stay the bankruptcy proceedings until we hear its adversary action. As a preliminary matter, we note that FMG has cited no support for its position. Moreover, such an alternative is unacceptable. We will not sanction a practice that will permit matters to languish in bankruptcy court until an adversary action can be heard. FMG's request is too extreme, would only hamper the expediency of the bankruptcy process, and is therefore denied.

### CONCLUSION

For the foregoing reasons, plaintiff-Debtor's motion to withdraw the reference to the bankruptcy court of its case or, in the alternative, stay the bankruptcy proceedings is denied.

1991 WL 247595 (N.D.Ill.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works