**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| OWENS CORNING, *et al.*, | Case No. 00-03837 (JKF) |
| | (Jointly Administered) |
| Debtors. | |
| Owens Corning, *et al.*, | Adv. Pro. No. 02-05829 (JPF) |
| Plaintiffs, | |
| | **Related to Adv. Docket Nos. 61, 65, 69, and 70** |
| v. | |
| Credit Suisse First Boston, individually and in its capacity as agent, *et al.*, | |
| Defendants. | |
| The Official Representatives of the Bondholders and Trade Creditors of Debtors Owens Corning, *et al.*, | Adv. Pro. No. 06-50122 (JKF) |
| Plaintiffs, | **Related to Adv. Docket Nos. 8, 10, 18, and 23** |
| v. | |
| Credit Suisse First Boston, individually and in its capacity as Agent, *et al.* | |
| Bank Defendants, | |
| IPM, Inc., *et al.*, | |
| Affiliate Non-Debtor Defendants. | |

**MEMORANDUM OF LAW OF THE OFFICIAL REPRESENTATIVES OF THE
BONDHOLDERS AND TRADE CREDITORS IN REPLY TO DEBTORS' AND BANKS'
OPPOSITION TO MOTION TO WITHDRAW REFERENCE OF SUBORDINATION
ADVERSARY ACTION (NO. 06-50122 (JKF)) FROM THE BANKRUPTCY COURT**

**INTRODUCTION**

The Official Representatives of the bondholders and trade creditors (the

"Official Representatives") of debtors Owens Corning Corporation ("Owens Corning" or

52693

"OCD") and certain of its subsidiaries (collectively, the "Debtors"), by and through their undersigned counsel, respectfully submit this memorandum of law in reply to Debtors' and OCD's prepetition lenders' (the "Banks") opposition to their motion (the "Motion"), pursuant to 28 U.S.C. § 157(d) and Fed. R. Bankr. P. 5011, for an order withdrawing the reference of Adv. Pro. No. 06-50122 captioned "The Official Representatives of the Bondholders and Trade Creditors of Debtors Owens Corning, *et al.,* Plaintiffs, v. Credit Suisse First Boston, individually and in its capacity as Agent, e *t al.,* Bank Defendants, and IPM, Inc., *et al.,* Affiliate Non-Debtor Defendants" (the "Subordination Adversary Action"), commenced by the Official Representatives in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") on January 6, 2006, and respectfully state as follows:[1]

## PRELIMINARY STATEMENT

Each of the Debtors' and Banks' arguments in opposition to the Motion is fatally flawed as outlined sequentially below.  To begin with, compelling considerations of judicial economy dictate that the claims in question[2] be adjudicated in this Court

---

[1]    Pursuant to this Court's February 22, 2006 Order Granting Joint Stipulation and Motion to Extend Time and Set Briefing Schedule, the Banks' opposition to the Motion was due to be filed and served "no later than February 23, 2006."  (Bank Adversary Action D.I. 68).  In violation of this Court's order, however, the Banks did not file their opposition until Friday, February 24, 2006 at 5:45 p.m., and counsel for the Official Representatives did not receive it until the following Monday morning -- one day before this reply was due to be filed and served. Accordingly, while the Official Representatives have attempted to respond to most of the issues raised by the Banks, it respectfully is submitted that this Court should not consider their untimely opposition.

[2]    The claims in question arise in two adversary actions:  (i)  the adversary proceeding in this Court which the Debtors themselves commenced in 2002 seeking, among other things, to avoid as fraudulent conveyances the obligations of the Debtors' subsidiary guarantors to the Banks (the "Bank Adversary Action"); and (ii) the related Subordination Adversary Action (together with the Bank Adversary Action, the "Adversary Actions") which the Official Representatives filed last month in the Bankruptcy Court and now seek to have removed to this Court.

because most of the factual and evidentiary record necessary to do so has already been developed and reviewed by this Court in the substantive consolidation dispute. The great weight of judicial authority supports this outcome.

Next, the argument that the claims asserted in the Adversary Actions are so intertwined with bankruptcy plan confirmation issues that they should be decided by the Bankruptcy Court in connection with confirmation hearings on the Debtors' Fifth Amended Joint Plan of Reorganization (the "Fifth Amended Plan") is contrary to controlling Third Circuit case law and Fed. R. Bankr. P. 7001. Many of the claims asserted in the Adversary Actions (the "Adversary Claims") must, under controlling law, be commenced and decided in the context of an adversary proceeding only. Thus, the Adversary Claims must, as a matter of law, be decided outside of plan confirmation hearings, and this Court, again because of its familiarity with the substantive consolidation record, is best situated to do so.

It also is incongruous for the Debtors to accuse the Official Representatives of attempting to "delay or derail the confirmation process" by seeking to conclude the Adversary Actions when the Debtors' themselves spent nearly four years pursuing the substantive consolidation dispute against the Banks. As noted above and in the Motion, much of the necessary discovery and evidentiary record required to adjudicate these claims has already been developed in this Court. Again, as the Debtors have admitted, the "facts giving rise to the [Adversary Actions] . . . *are well known to this Court,*" and this Court accordingly is in the best position expeditiously to resolve these claims in order for the Debtors' bankruptcy cases to come to a final resolution.

While the Debtors seek to have the Bankruptcy Court consider the Adversary Claims as part of the plan confirmation process, they now apparently admit that they have no intention of permitting those claims to be actually adjudicated in the Bankruptcy Court.  Rather, Debtors apparently believe that they need to do nothing more than to convince the Bankruptcy Court that the Adversary Claims are not substantial enough to impede confirmation of the Fifth Amended Plan and, by so doing, relegate the Official Representatives to an appeal of the Bankruptcy Court's confirmation order -- to this Court, of course.  If the Debtors' new strategy should succeed, the Adversary Claims will never be heard in the Bankruptcy Court and the Official Representatives, who are fiduciaries for creditors holding aggregate claims of approximately $1.8 billion,[3] will have been deprived of their day in court.  Surely, there is no bankruptcy policy which would favor such a result.

Finally, despite the Debtors' and Banks' intimations to the contrary, the Adversary Claims are in no way inconsistent with, or precluded by, the Third Circuit's substantive consolidation decision.  In fact, in its substantive consolidation opinion in this case the Third Circuit virtually instructed the Official Representatives to pursue these claims.

---

[3]    The Banks are incorrect in their assertion that the Official Representatives act only for the interests of John Hancock Life Insurance Company.  On October 23, 2000, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee"), which today consists of two representatives of OCD's bond and trade debt holders (Wilmington Trust Company, as Indenture Trustee, and John Hancock Life Insurance Company) and two bank representatives.  Thus, contrary to the Banks' assertion, the Official Representatives are fiduciaries who represent the interests of OCD's bondholders and trade creditors whose claims in the aggregate total approximately $1.8 billion.  Moreover, Wilmington Trust Company itself is the indenture trustee for $1.3 billion of such bond debt.  It also is worth noting that, while Credit Suisse purports to speak for the Banks, only a steering committee of the Banks supports the Fifth Amended Plan, and, in fact, the *Ad Hoc* Committee of OCD creditors holding, in the aggregate, more than one-third of both bank and bond debt, *opposes* the Fifth Amended Plan.

Accordingly, this Court should withdraw the reference of the Subordination Adversary Action.

## ARGUMENT

### I.     CAUSE EXISTS TO WITHDRAW THE REFERENCE OF THE SUBORDINATION ADVERSARY ACTION

The Debtors and Banks argue that, as core proceedings, the Adversary Actions belong in the Bankruptcy Court. *See* Debtors' Br.[4] at 6-9; Banks' Br.[5] at 9-13. But it is well-settled that "core proceedings may be withdrawn for cause shown." *Valley Forge Plaza Assocs. V. Fireman's Fund Ins. Cos.*, 107 B.R. 514, 516 n.4 (E.D. Pa. 1989); *see also Mishkin v. Ageloff*, 220 B.R. 784, 800 (S.D.N.Y. 1998) (withdrawing reference of two core matters for purposes of efficiency and uniformity); *Crown Heights Jewish Comm. Council, Inc. v. Fischer, (In re Fischer)*, 202 B.R. 341, 354 (E.D.N.Y. 1996) (withdrawing reference of core matter for purposes of judicial efficiency). "In the final analysis, the critical question is efficiency and uniformity." *Miskin*, 220 B.R. at 800; *see also Hatzel & Buehler, Inc. v. Orange & Rockland Utilities, Inc.*, 107 B.R. 34, 39 (D. Del. 1989) ("Permissive withdrawal for 'cause' includes considerations of . . . judicial economy").

---

[4]     "Debtors' Br." refers to Debtors' Memorandum Of Law (1) In Reply To The Official Representatives' Opposition To Motion To Refer Bank Adversary Action To The Bankruptcy Court And (2) In Response To Motion Of The Official Representatives Of The Bondholders And Trade Creditors Of The Debtors To With The Reference Of Subordination Adversary Action No. 06-50122 (JKF) From The Bankruptcy Court, dated February 23, 2006 -- Subordination Adversary Action D.I. 18.

[5]     "Banks' Br." refers to Response Of Credit Suisse (i) In Support Of Debtor And Non-Debtor Plaintiffs Motion To Refer Fraudulent Transfer Adversary Proceeding To The Bankruptcy Court And (ii) In Opposition To Motion Of The Official Representatives Of The Bondholders And Trade Creditors To Withdraw The Reference With Respect To Equitable Subordination Adversary Proceeding, dated February 24, 2006 -- Subordination Adversary Action D.I. 23.

The Debtors and Banks also attack, as insufficient, the Official Representatives' basis for withdrawal -- this Court's existing familiarity with the extensive substantive consolidation record, consisting of more than 3,000 detailed stipulations of fact, a trial transcript of more than 2,000 pages, 205 exhibits, and 7,436 pages of deposition transcripts, upon which the parties will substantially rely in connection with prosecuting and defending the Adversary Claims.  *See* Debtors' Br. at 6; Banks' Br. at 15-16.  Again, the Debtors' and Banks' arguments fly in the face of applicable legal authority.  Indeed, several district courts have withdrawn the reference to adversary proceedings based on their existing familiarity with the facts and issues presented by the adversary proceeding for which withdrawal was sought.

For example, in *In re Fischer*, the Eastern District of New York withdrew the reference of a core proceeding -- a motion to lift the automatic stay of a civil RICO action -- because the civil RICO action had been pending in that court for more than four years, extensive work had been done by the magistrate judge, discovery had progressed significantly, and numerous substantive motions already had been decided by the District Court.  *See Crown Heights Jewish Comm. Council, Inc. v. Fischer, (In re Fischer)*, 202 B.R. 341, 354 (E.D.N.Y. 1996).  Thus, in the interests of judicial efficiency, the District Court withdrew the reference to the core proceeding.  *See id.*

Similarly, in *Wechsler v. Squadron, Ellenoff, Plesent, & Sheinfeld LLP*, 201 B.R. 635, 640 (S.D.N.Y. 1996), the Southern District of New York withdrew the reference of an adversary proceeding based in part on its intimate knowledge of the facts underlying the case as a result of the court's adjudication of a prior related litigation.  The *Wechsler* Court emphasized the significant time and judicial resources

that it expended reading the parties' briefs, hearing oral argument, and issuing orders and other reports in the prior litigation.  *See id.*  The court concluded that:  "Given the fact that the District Court is so familiar with the facts and legal theories contained in both complaints, judicial economy suggests that the District Court should hear this case . . . ."  *Id.*; *see also Houbigant, Inc. v. ACB Mercantile Inc. (In re Houbigant, Inc.)*, 185 B.R. 680, 686 (S.D.N.Y. 1995) (denying motion to restore reference to the bankruptcy court where district court was already familiar with the relevant facts by virtue of prior related cases); *Wedtech Corp. v. London (In re Wedtech Corp.)*, 81 B.R. 237, 239 (S.D.N.Y. 1987) (finding that, where a proceeding in bankruptcy involves common issues of law and fact with a case pending in district court, "the overlapping of facts, transactions, and issues in the two cases . . . is good cause for withdrawal of the reference and consolidation with the district court proceeding.").

Here, in light of this Court's existing familiarity with the extensive substantive consolidation evidentiary record, it has a substantial "leg up" on the Bankruptcy Court and thus judicial economy strongly favors withdrawal of the reference. The Debtors admit that "the issues and facts underlying the Adversary Actions are complex" and that this Court is already familiar with them.  Debtors' Br. at 15; Bank Adversary Action D.I. 61 at 7.  It would be a waste of judicial resources to require the Bankruptcy Court to spend the numerous hours necessary to familiarize itself with the extensive substantive consolidation evidentiary record when this Court, which likely will review the Bankruptcy Court's decision in any event, has already done so.  Because of its "leg up" on the Bankruptcy Court, if this Court decides to hear the Adversary Claims, subject of course to the Court's own scheduling constraints, the Official Representatives

submit that it can decide these issues comfortably within the time frame set by the Bankruptcy Court for hearings on the Debtors' Fifth Amended Plan.  In that event, contrary to the Debtors' and Banks' assertions, the Adversary Claims will not be litigated in two courts.  *See* Debtors' Br. at 16; Banks' Br. at 4, 14-16.

It is worth noting that, while the Debtors and Banks now object to the withdrawal of the reference of the Subordination Adversary Action, they were totally supportive of District Judge Alfred M. Wolin's earlier decision to withdraw the reference to the substantive consolidation motion and the Bank Adversary Action.  (Bankr. D.I.[6] 6785).  As a result of that earlier withdrawal of the reference, this Court is already familiar with the extensive factual record which the parties will rely upon heavily in prosecuting and defending many of the Adversary Claims.  Clearly, judicial economy suggests that this Court should decide these issues.

Even more tellingly, this Court may recall that the Banks themselves vociferously pursued their own motion to withdraw the reference to the Bankruptcy Court of a panoply of matters in these cases.  Indeed, on August 2, 2004, the Banks moved in this Court to withdraw the reference of all matters and proceedings relating to the Debtors' Chapter 11 cases, subject to referring back to the Bankruptcy Court four specified matters.  (Bankr. D.I. 12301 and 12302).[7]  In support of their motion, the Banks averred that concerns for uniformity, forum shopping and confusion, waste of the Debtors' and creditors' resources, and expeditious resolution of the Debtors' bankruptcy

---

[6]    "Bankr. D.I." refers to the corresponding entry on the docket of the Bankruptcy Court for the jointly administered bankruptcy cases of the Debtors, Bankruptcy Case No. 00-03837.

[7]    Less than a month prior, the Banks moved in the District Court to withdraw the reference with respect to all proceedings relating to asbestos claims valuation.  (Bankr. D.I. 12013).

cases all weighed in favor of withdrawing the reference to all but four matters. (Bankr. D.I. 12302 at 21-30). Incredibly, now that withdrawal of the reference no longer suits their needs, the Banks' have taken the position that these very same factors all weigh against withdrawal of the reference of the Subordination Adversary Action. *See* Banks' Br. at 9-17. The Banks cannot have it both ways.

Finally, and contrary to the Debtors' and Banks' assertions, the Official Representatives have not delayed in bringing the Subordination Adversary Action. *See* Debtors' Br. at 13; Banks' Br. at 17-19. On October 3, 2002, Debtors commenced the Bank Adversary Action. (Bank Adversary Action D.I. 1). Shortly thereafter, the Official Representatives sought to intervene. (Bank Adversary Action D.I. 16). Because substantive consolidation of the Debtors' estates would have mooted the majority of claims asserted in the Bank Adversary Action, however, that action was repeatedly stayed, initially by the Bankruptcy Court and, following withdrawal of the reference, by this Court, pending the outcome of the substantive consolidation motion. (Bank Adversary Action D.I. 27 and 44). Since substantive consolidation also would have mooted the equitable subordination and veil piercing claims asserted in the Subordination Adversary Action, it would not have made any sense for the Official Representatives to bring those claims any earlier than they did -- shortly after the Third Circuit's substantive consolidation ruling. Thus, the Official Representatives have not delayed in bringing the Subordination Adversary Action and now seek withdrawal of the reference to this action in order to expedite its resolution.

## II.    THE ADVERSARY CLAIMS CANNOT PROPERLY BE ADJUDICATED DURING PLAN CONFIRMATION HEARINGS

Debtors and the Banks argue that the reference to the Subordination Adversary Action should not be withdrawn, and that the Debtor's motion to refer the Bank Adversary Action to the Bankruptcy Court should be granted, in order for the Bankruptcy Court to determine the Adversary Claims in the context of confirmation hearings for the Fifth Amended Plan. *See* Debtors' Br. at 7-9; Banks' Br. at 12-13.  The Banks even go so far as to state that the Adversary Claims "are, after all, confirmation objections." Banks' Br. at 17.  Apart from the fact that they are not, the Debtors and Banks also overlook the legal barrier for doing so.

The Adversary Claims include claims for fraudulent transfer, equitable subordination and veil piercing.  Rule 7001 of the Federal Rules of Bankruptcy Procedure ("Rule 7001") sets forth an enumerated list of actions that must be commenced by adversary proceeding.  In pertinent part, Rule 7001 provides that "[t]he following are adversary proceedings:  (1) a proceeding to recover money or property[;] . . . (7) a proceeding to obtain . . . equitable relief, except when a . . . chapter 11 . . . plan provides for the relief; (8) a proceeding to subordinate any allowed claim or interest, except when a . . . chapter 11 . . . plan provides for subordination; (9) a proceeding to obtain a declaratory judgment relating to any of the foregoing[.]"

Pursuant to this rule, actions falling within the enumerated list, including actions for equitable subordination and fraudulent conveyance, constitute separate actions that cannot be considered in connection with the plan confirmation process. *See Peltz v. Worldnet Corp. (In re USN Commc'ns, Inc.)*, 280 B.R. 573, 587 (Bankr. D. Del. 2002) ("a preference action is not one that 'could have been brought at the same

time as' a prior confirmation hearing for the purposes of *res judicata* because the confirmation process constitutes a contested matter under the Bankruptcy Rules, whereas a preference action must be commenced as an adversary proceeding under Fed.R.Bankr.P. 7001."); *see also Protarga, Inc. v. Webb (In re Protarga, Inc.)*, Adv. 04-53374, 2004 WL 1906145, at *3 (Bankr. D. Del. Aug. 25, 2004) (denying relief sought because "[c]laims for equitable subordination must be brought as a separate adversary proceeding pursuant to Rule 7001(8) . . . .").[8]

   The Third Circuit itself, as well as courts within the Third Circuit, have held that the actions set forth in Rule 7001 must be brought by adversary proceeding and, further, that it constitutes reversible error for a bankruptcy court to adjudicate such claims during plan confirmation hearings.  *See In re McKay*, 732 F.2d 44, 45 (3d Cir. 1984) (reversing orders of the bankruptcy and district court confirming plan which contained a list of liens to be avoided and holding that an action to avoid a lien under §522(f) had to be brought by way of adversary proceeding rather than merely being listed in the plan); *Peltz v. Worldnet Corp.*, 280 B.R. at 587, *supra*; *see also In re Indri*, 126 B.R. 443, 445 (Bankr. D.N.J. 1991) (bankruptcy court refused to rule on substance of debtor's motion to avoid lease termination as preference or fraudulent transfer because such avoidance action had to be brought through separate adversary proceeding).

   Accordingly, even if this Court were to deny the Motion and refer the Bank Adversary Action to the Bankruptcy Court, contrary to the Debtors' and Banks' arguments, the Adversary Claims could not be decided during confirmation hearings on

---

[8]   A copy of *In re Protarga, Inc.* is attached hereto as Exhibit "A."

the Fifth Amended Plan.  Instead, under Rule 7001, the Adversary Actions would have

to be adjudicated as separate proceedings, and the Bankruptcy Court likely would have

to delay confirmation hearings while acquainting itself with the extensive substantive

consolidation record.  If this Court were to hear the Adversary Claims, however, it is

likely that they could be resolved before confirmation hearings are set to commence in

July 2006.

**III.    FAILURE TO WITHDRAW THE REFERENCE OF THE
         SUBORDINATION ADVERSARY ACTION MAY DEPRIVE THE
         OFFICIAL REPRESENTATIVES OF THEIR DAY IN COURT**

        In their opposition to the Motion, Debtors expose their intent to bury the

Adversary Claims before any court has had a chance fully to consider them.  *See*

Debtors' Br. at 12-13.  As stated above, the Debtors and Banks argue that the

Adversary Claims should be dealt with by the Bankruptcy Court in connection with

confirmation hearings on the Fifth Amended Plan.  *See* Debtors' Br. at 7-9; Banks' Br. at

12-13.  The Debtors candidly admit, however, their intention to steamroll through the

plan confirmation process (without fully adjudicating the Adversary Claims) by

attempting to convince the Bankruptcy Court that the Adversary Claims are not

substantial enough to hold up confirmation of the Fifth Amended Plan.  *See* Debtors' Br.

at 12-13.  If this should occur, the Debtors likely will do all they can to "substantially

consummate" the Fifth Amended Plan while the Official Representatives are appealing

the confirmation order -- to this Court, of course.  In that event, the Bankruptcy Court will

not have adjudicated the Adversary Claims, which nevertheless will still be left for this

Court to decide in one context or another.  By contrast, withdrawing the reference to the

Subordination Adversary Action would promote the fastest possible resolution of these

bankruptcy cases.

## IV.    THE THIRD CIRCUIT'S SUBSTANTIVE CONSOLIDATION RULING DOES NOT PRECLUDE THE ADVERSARY CLAIMS

The Debtors and the Banks intimate that the Third Circuit's substantive consolidation ruling somehow inhibits the Official Representatives' ability to prosecute the Adversary Claims.  *See* Debtors' Br. at 5-8, 19; Banks' Br. at 2-3, 6.  To the contrary, the Adversary Claims are in no way inconsistent with, or precluded by, the Third Circuit's substantive consolidation decision.  In fact, in its substantive consolidation opinion in this case, after explaining that fraudulent conveyance and equitable subordination typically are the mechanisms through which harms caused by creditors are remedied, the Third Circuit stated that "[i]f the bondholders have a valid claim" that "the Banks defrauded them in connection with a prospectus distributed with respect to a sale of OCD bonds underwritten by some of the Banks," they will have to prove it in the District Court.  *In re Owens Corning*, 419 F.3d 195, 215 n.27 (3d Cir. 2005).  The Third Circuit also did all but instruct that the Bank Adversary Action proceed to final determination:  "If the Banks are so vulnerable to the fraudulent transfer challenges Debtors have teed up (but have not swung at for so long), then the game should be played to the finish in that arena."  *In re Owens Corning*, 419 F.3d 195, 215 (3d Cir. 2005).

All parties have long understood that, had substantive consolidation of the Debtors' estates been denied, the Adversary Claims would need to be litigated to a final determination.  In their appellate brief submitted to the Third Circuit in support of this Court's decision ordering substantive consolidation ("Debtors' App. Br."), the Debtors themselves acknowledged that, among other benefits, the imposition of substantive consolidation would have eliminated the need for creditor litigation against the estates.

> "The District Court found that substantive consolidation will provide
> significant benefits . . . avoiding costly and time-consuming litigation
> of potentially millions of intercompany claims (as each creditor had
> the right to challenge OCD's characterization of these
> transactions)."

Debtors' App. Br. at 47.[9]  Indeed, on this score, the Debtors agreed with the District

Court and asserted that if the estates were not substantively consolidated, "[e]xtensive

litigation would be required to determine both the identity of the 'rightful' creditor of each

estate, and its, the [sic] assets."  *Id.* at 48.  Thus, "[a[bsent substantive consolidation,

such litigation will certainly ensue, which will significantly delay recoveries by all

creditors."  *Id.*

Specifically, the Debtors were well aware that such litigation would

include:

> veil-piercing [claims] . . . to determine whether [the] subsidiaries are
> liable alter-egos . . . litigation . . . to determine the value of the
> subsidiary guaranties under Section 10.02 of the Creditor
> Agreement . . . and the validity of the subsidiary guaranties under
> fraudulent conveyance law.  A final resolution of all such litigation
> would be necessary to determine which parties have claims against
> each of the "separate estates."

*Id.* at 49-50.  The Debtors also anticipated "[a] second wave of litigation [that] would

also entail the endless attempt to judicially determine the assets of each estate."  *Id.* at

50.  According to the Debtors, this second wave would require, among other things, an

examination and accounting of "the myriad of unexamined transactions[,]" and would

involve "litigation over millions of intercompany transfers, large and small…[including]

challenge[s to such transfers] as fraudulent conveyances."  *Id.*  Additionally, creditors

---

[9]        The relevant pages of the Debtors' App. Br. are attached hereto as Exhibit "B."

would also seek to litigate "claims involving transfers of value never accounted for, such as loans made without interest or without market interest." *Id.* at 51.

Likewise, in their brief to the Third Circuit appealing this Court's substantive consolidation ruling (the "Banks' App. Br."), the Banks stated that, if substantive consolidation was reversed, they would be "completely willing to defend [the Bank Adversary Action] to final judgment." Banks' App. Br. at 59.[10]

Now that the time has come to conclude these matters, however, the Debtors and Banks both have done an about face and are attempting to bury these claims in plan confirmation hearings. Their improper attempt to do so should not be countenanced by this Court. Accordingly, this Court should withdraw the reference of the Subordination Adversary Action.[11]

---

[10]    The relevant pages of the Banks' App. Br. are attached hereto as Exhibit "C."

[11]    The Banks argue that the Official Representatives have violated Del. Bankr. L.R. 5011-1 by failing to file a motion in the Bankruptcy Court to determine whether the claims for which withdrawal of the reference are sought are core or non-core ("Rule 5011-1 Motion"). *See* Banks' Br. at 10-11. In their opening brief, the Official Representatives submitted that this requirement was inapplicable because they do not seek withdrawal of the reference based on the existence of non-core claims. (Bank Adversary Action D.I. 65 at 2 n.2). Subsequently, however, on February 24, 2006, several hours before the Banks' filed their opposition, the Official Representatives joined in the Debtors' Rule 5011-1 Motion both in an abundance of caution and in light of the Bankruptcy Court's concern, voiced at a February 21, 2006 omnibus hearing, that this procedural requirement be satisfied. (Subordination Adversary Action D.I. 22).

## CONCLUSION

For the foregoing reasons, the Official Representatives respectfully request that this Court enter an Order substantially in the form attached to the Motion: (i) denying the Debtors' Motion to Refer the Bank Adversary Proceeding to the Bankruptcy Court; (ii) granting the Official Representatives' Motion to withdraw the reference of the Subordination Adversary Proceeding from the Bankruptcy Court; and (iii) granting such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated: February 28, 2006

By:   /s/ Francis A. Monaco, Jr.
     Francis A. Monaco, Jr. (#2078)
     MONZACK & MONACO, P.A.
     1201 Orange Street, Suite 400
     Wilmington, Delaware 19801
     Telephone: 302-656-8162

     J. Andrew Rahl, Jr.
     John B. Berringer
     Howard D. Ressler
     Mark Weldon
     Dennis J. Artese
     ANDERSON KILL & OLICK, P.C.
     1251 Avenue of the Americas
     New York, NY 10020
     Telephone: 212-278-1000

     Attorneys for Official Representatives of the Bondholders and Trade Creditors of Debtors Owens Corning, *et al.*

# EXHIBIT A



Not Reported in B.R.
Not Reported in B.R., 2004 WL 1906145 (Bankr.D.Del.), 43 Bankr.Ct.Dec. 138
(Cite as: 2004 WL 1906145 (Bankr.D.Del.))

Page 1

**H**

United States Bankruptcy Court,
D. Delaware.
In re: PROTARGA, INC., f/k/a Neuromedica, Inc.,
Debtor.
PROTARGA, INC., Plaintiff,
v.
Nigel L. WEBB and Five Palms Corporation, Ltd.,
Defendants.
Nigel L. WEBB, Third-Party Plaintiff,
v.
Robert DICKEY, IV, Third-Party Defendant.
**No. 03-12564 (PJW), ADV. 04-53374.**

Aug. 25, 2004.

Raymond H. Lemisch, Adelman Lavine Gold and
Levin, PC, Wilmington, DE, William R. Hinchman,
Jennifer R. Hoover, Adelman Lavine Gold and
Levin, PC, Philadelphia, PA, for the Debtor.

Warren T. Pratt, Drinker Biddle & Reath LLP,
Wilmington, DE, for Nigel L. Webb and Five Palms
Corporation, Ltd.

MEMORANDUM OPINION

WALSH, Bankruptcy J.

*1 This opinion is with respect to plaintiff Protarga,
Inc.'s (the "Debtor") motion (Doc. # 8) to dismiss the
counterclaim and third-party complaint of defendant
Nigel L. Webb ("Webb"). For the reasons set forth
below, the Court will deny the Debtor's motion to
dismiss Webb's counterclaim but will grant the
Debtor's motion to dismiss Webb's third-party
complaint.

BACKGROUND

On August 14, 2003, the Debtor filed a voluntary
petition under chapter 11 of title 11 of the United
States Code, 11 U.S.C. §§ 101 et seq. (the
"Bankruptcy Code"). Prior to the sale of substantially
all of its assets in its chapter 11 case, the Debtor
operated as a drug development company.

From 1993 until July 2003, Webb acted as president
and chief executive officer of the Debtor. In August
2000, Webb was elected chairman of the board of
directors. Over the course of his tenure with the
Debtor, Webb entered into three successive
employment agreements, the last of which was set to

expire on May 31, 2006. [FN1]

> FN1. In their pleadings, the parties refer to
> employment agreements, indemnification
> agreements, and the Debtor's by-laws
> (collectively, the "Agreements"). However,
> the parties have not filed complete versions
> of any of these documents and therefore I
> am not in a position to rule on certain of the
> parties claims.

On or about October 29, 2003 Webb filed a proof of
claim for unpaid separation pay, bonus pay, vacation
pay, expenses, Cobra-period benefits, and liquidated
damages. On May 7, 2004, the Debtor objected to
Webb's proof of claim by commencing this adversary
proceeding. In addition to its objection to the Webb
claim, the Debtor asserted a counterclaim against
Webb and a third-party complaint against Five Palms
Corporation (a company controlled by Webb).
Among other things, the Debtor alleged that Webb
and Five Palms Corporation wrongfully received
benefits from the Debtor through Webb's illegal use
of the Debtor's resources. In response to these
allegations, Webb asserted a counterclaim against the
Debtor for indemnification and made a third-party
complaint requesting the Court to equitably
subordinate the claims of Robert Dickey, IV
("Dickey") pursuant to Bankruptcy Code § 510(c).
Through his pleadings, Webb states that Dickey is a
director and the sole officer of the Debtor as well as a
creditor holding a general unsecured claim in the
amount of $275,000 or more. Webb's third-party
complaint alleges that Dickey wasted the Debtor's
assets, misappropriated funds, and breached certain
fiduciary duties.

The Debtor now moves to dismiss both Webb's
counterclaim for indemnification and his request for
equitable subordination of Dickey's claim. Webb, of
course, has filed his opposition to the Debtor's motion
to dismiss.

The narrow issues presented in the instant matter are
(a) whether Webb's counterclaim should be dismissed
pursuant to Rule 12(b)(6) of the Federal Rules of
Civil Procedure [FN2] for failure to state a claim
upon which relief can be granted and (b) whether
Webb's request for equitable subordination should be
dismissed because it fails to qualify as a third-party
complaint under Rule 14(a) of the Federal Rules of

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Civil Procedure. [FN3]

> FN2. Rule 7012(b) of the Federal Rules of Bankruptcy Procedure states that "Rule 12(b)-(h) FR Civ P applies in adversary proceedings."

> FN3. Rule 7014 of the Federal Rules of Bankruptcy Procedure states that "Rule 14 FR Civ P applies in adversary proceedings."

DISCUSSION
A. Webb's Counterclaim

The Debtor moves to dismiss Webb's counterclaim for indemnification pursuant to Rule 12(b)(6) arguing that the complaint fails to state a claim upon which relief can be granted. In deciding a motion to dismiss, a court is required to determine whether, under any reasonable reading of the pleadings, a plaintiff (or a counterclaiming defendant) may be entitled to relief, and must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom. _Langford v. City of Atlantic City,_ 235 F.3d 845, 847 (3d Cir.2000). In considering a Rule 12(b)(6) motion, the court should not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence in support of their claims. _Scheuer v. Rhodes,_ 416 U.S. 232, 236 (1974). Thus, a court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." _Conley v. Gibson,_ 355 U.S. 41, 45-46, (1957).

*2 In his counterclaim, Webb claims that he is entitled to indemnification based on (1) title 8 of the Delaware Code ("Delaware General Corporation Law") and (2) the Agreements. Because I find that Webb may be able to prove sufficient facts to support his request for indemnification, I will deny the Debtor's motion to dismiss for failure to state a claim. In doing so, I express no opinion as to the merits of Webb's indemnification claim, rather, I simply hold that upon a reasonable reading of the pleadings, Webb has withstood the test of a Rule 12(b)(6) motion.

1) Delaware General Corporation Law

Title 8, section 145(c) of the Delaware Code provides:
> To the extent that a present or former director or officer of a corporation has been successful on the merits or otherwise in defense of any action, suit or

proceeding referred to in subsections (a) and (b) of this section, or in defense of any claim, issue or matter therein, such person shall be indemnified against expenses (including attorneys' fees) actually and reasonably incurred by such person in connection therewith.
Del.Code Ann. tit. 8, § 145(c) (2001).

Section 145(c) provides grounds for denying the Debtor's Rule 12(b)(6) motion. Under section 145(c) Webb would be entitled to indemnification for successfully defending against the Debtor's claims. _See Green v. Westcap Corp. of Del.,_ 492 A.2d 260, 265 (Del.Super.Ct.1985) (stating that director/officer "is entitled to be indemnified ... if the prior proceeding arose by reason of the fact that he is or was a director, officer, or employee of the corporation"); _Witco Corp. v. Beekhuis,_ 38 F.3d 682, 691 (3d Cir.1994) ("Section 145(c) is a mandatory provision that applies to all Delaware corporations and grants an absolute right of indemnification...."). Because Webb has alleged that section 145(c) will apply if he is successful in his defense and because case law shows that indemnification would in fact be proper, I find that Webb has stated a claim for relief and may therefore proceed with his counterclaim.

Furthermore, title 8, section 145(b) of the Delaware Code provides:
> A corporation shall have power to indemnify any person who was or is a party or is threatened to be made a party to any threatened, pending or completed action or suit by or in the right of the corporation to procure a judgment in its favor by reason of the fact that the person is or was a director, officer, employee or agent of the corporation, or is or was serving at the request of the corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise against expenses (including attorneys' fees) actually and reasonably incurred by the person in connection with the defense or settlement of such action or suit if the person acted in good faith and in a manner the person reasonably believed to be in or not opposed to the best interests of the corporation and except that no indemnification shall be made in respect of any claim, issue or matter as to which such person shall have been adjudged to be liable to the corporation unless and only to the extent that the Court of Chancery or the court in which such action or suit was brought shall determine upon application that, despite the adjudication of liability but in view of all the circumstances of the case, such person is fairly and reasonably entitled to

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

indemnity for such expenses which the Court of Chancery or such other court shall deem proper.
  *3 Del.Code Ann. tit. 8, § 145(b) (2001).

 In his pleadings Webb states that the Debtor's by-laws provide for indemnification and that he acted "at all times in good faith and in a manner he reasonably believed to be in (or not opposed to) the best interests of the Debtor." (Doc. # 5 at 13.) If both of these claims hold, Webb may be entitled to indemnification pursuant to section 145(b). Because I must accept Webb's statements as true for purposes of this ruling, I must deny the Debtor's motion to dismiss for failure to state a claim.

  2) Indemnification under the Agreements

 Because I have already found that Delaware General Corporation Law provides sufficient grounds to deny the Debtor's Rule 12(b)(6) motion and because the parties have failed to provide complete copies of the relevant materials, I decline to make any ruling with respect to the Agreements.

 B. Webb's Third-Party Complaint

 The Debtor moves to dismiss Webb's complaint for equitable subordination of Dickey's claim on the grounds that it fails to qualify as a third-party complaint under Rule 14(a) of the Federal Rules of Civil Procedure.

 Rule 14(a) of the Federal Rules of Civil Procedure states in relevant part:
  [a]t any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff. Fed.R.Civ.P. 14(a).

 "A third-party plaintiff's claim may be asserted under Rule 14(a) only when the third party's liability is 'in some way dependent on the outcome of the main claim or when the third party is secondarily liable to the defendant." ' Foulke v. Dugan, 212 F.R.D. 265, 269 (E.D.Pa.2002) (quoting 6 Charles Alan Wright et al., Federal Practice and Procedure § 1446 (2d ed.1990)); Fed. Deposit Ins. Corp. v. Bathgate, 27 F.3d 850, 873 (3d Cir.1994).

 Webb's third-party complaint alleges misappropriation of funds, waste of assets, breach of fiduciary duties, and requests equitable subordination of Dickey's claims. Although it is true that subordination of Dickey's claim could yield a larger payout to remaining creditors, Webb fails to show how that result is somehow dependent upon the dispute between himself and the Debtor. Furthermore, Webb does not even allege that Dickey bears any burden of secondary liability. The dispute between Webb and the Debtor consists of a disagreement over Webb's proof of claim, whether Webb is entitled to indemnification, and whether Webb improperly used corporate assets. Because Webb has not shown any connection between his potential liability to the Debtor and his claim for equitable subordination, I must grant the Debtor's motion to dismiss Webb's third-party complaint.

 Claims for equitable subordination must be brought as a separate adversary proceeding pursuant to Rule 7001(8) of the Federal Rules of Bankruptcy Procedure. This ruling in no way prejudices Webb from filing an independent complaint that would be procedurally sustainable.

 *4 As an additional matter, the Debtor argues that if Webb's third-party complaint was procedurally proper, dismissal was still required because Webb lacks standing to bring the claim for equitable subordination. Courts disagree whether or not individual creditors have standing to pursue equitable subordination claims. Mark D. Sherrill, The Uncertain Ground of Creditors' Standing in Equitable Subordination Actions, Norton Bankruptcy Law Advisor, Feb. 2003, at 15. Because I have determined that the request for equitable subordination is improperly before me in this adversary proceeding, I need not reach a decision on Webb's standing at this time.

                    CONCLUSION
 For the reasons set forth above, this Court will deny the Debtor's motion to dismiss Webb's counterclaim but will grant the Debtor's motion to dismiss Webb's third-party complaint.

                      ORDER
 For the reasons set forth in the Court's Memorandum Opinion of this date, Protarga Inc.'s motion (Doc. # 8) to dismiss Nigel L. Webb's counterclaim and to dismiss Nigel L. Webb's third-party complaint is DENIED as to the counterclaim but is GRANTED as to the third-party complaint.

 Not Reported in B.R., 2004 WL 1906145 (Bankr.D.Del.), 43 Bankr.Ct.Dec. 138

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in B.R.                                                                                    Page 4
Not Reported in B.R., 2004 WL 1906145 (Bankr.D.Del.), 43 Bankr.Ct.Dec. 138
**(Cite as: 2004 WL 1906145 (Bankr.D.Del.))**

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT B

No. 04-4080

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

IN RE: OWENS CORNING, *ET AL.*,

*DEBTORS.*

CREDIT SUISSE FIRST BOSTON, AS AGENT,

*APPELLANT,*

v.

OWENS CORNING, *ET AL.*,

*APPELLEES.*

**BRIEF OF APPELLEES OWENS CORNING, *ET AL.*
ON APPEAL FROM ORDER OF UNITED STATES DISTRICT COURT
(JOHN P. FULLAM, S.J.) OVERRULING OBJECTION TO
SUBSTANTIVE CONSOLIDATION**

Norman L. Pernick
J. Kate Stickles
SAUL EWING LLP
222 Delaware Avenue
P.O. Box 1266
Wilmington, DE 19899-1266
Tel: (302) 421-6800
Fax: (302) 421-6813

Charles O. Monk, II
Joseph M. Fairbanks
Henry R. Abrams
Dan Friedman
SAUL EWING LLP
100 South Charles Street
Baltimore, MD 21201-2773
Tel: (410) 332-8600
Fax: (410) 332-8862

*Counsel for Owens Corning, et al., Appellees*

Dated: January 19, 2005

**B.**    ***The District Court was Correct in
Finding that Substantive Consolidation
Will Provide Significant Benefits.***

The District Court found that substantive consolidation will provide

significant benefits by (1) simplifying and expediting resolution of the Owens

Corning bankruptcy and (2) avoiding costly and time-consuming litigation of

potentially millions of intercompany claims (as each creditor has the right to

challenge OCD's characterization of these transactions).  Other substantial benefits

supported by the record include:

- Substantive consolidation promotes a more equitable distribution to all creditors by avoiding a windfall to the bank debt holders.

- Substantive consolidation will allow confirmation and consummation of a single plan of reorganization rather than separate plans for OCD and no fewer than 17 debtor subsidiaries who, as a practical matter, are incapable of generating independent distributions or operating separately from OCD. *See In re Eagle-Picher Indus., Inc.*, 192 B.R. at 907.

- Substantive consolidation will enable OCD to retain control of its intellectual property assets and its foreign subsidiaries and joint ventures, which are critical to Owens Corning enterprise's ability to emerge successfully from bankruptcy and maintain its value.

- Substantive consolidation will eliminate the prospect that, under separate plans, different creditor groups will control OCD's subsidiaries, which would undermine the successful operation of the enterprise.[20]

---

[20]    This Court is free to rely on these substantial benefits as additional grounds for affirming the District Court's Order. *Erie Telecomm., Inc. v. City of Erie*, 853 F.2d 1084 (3d Cir. 1988).

These and the other benefits described in the District Court's opinion are supported by the record, well-recognized, and satisfy the movants' burden of proof.

Expediting the process of emergence – while respecting creditors' rights – is a legitimate benefit of substantive consolidation, because it hastens payment to all creditors and avoids the delay and dissipation of value that often occur in resolving intra-enterprise disputes in bankruptcy. Rapid emergence particularly benefits the asbestos tort victims, involuntary creditors of this estate, for whom every day of delay increases the chance of death before recovery. *In re Eagle-Picher Indus.*, 192 B.R. at 907 (finding as a benefit of substantive consolidation that the proposed plan of reorganization created a fund "so that the immediate needs of many asbestos claimants in dire straits can be attended to upon confirmation"); *See also, In re Kensington Int'l Ltd.*, 353 F.3d 211, 219, 225 n.13 (3d Cir. 2003). Extensive litigation would be required to determine both the identity of the "rightful" creditor of each estate, and its, the assets. Absent substantive consolidation, such litigation will certainly ensue, which will significantly delay recoveries by all creditors.

The identification of rightful creditors of each subsidiary involves consideration of successor liability claims by the asbestos claimants against the subsidiary guarantors. Both the ACC and the Futures Representative asserted during the hearing below that if substantive consolidation were not granted, they

would bring such claims against at least OCFT and IPM. (A66:22-68:20). Given

company documents expressing the intention to move assets to the entities to place

them beyond the reach of asbestos claimants, it cannot be said that the successor

liability claims are frivolous. Elimination of successor liability claims would

provide substantial benefits by avoiding difficult litigation, involving lengthier

delays and substantial costs. Any resolution of the Owens Corning bankruptcy that

does not fully discharge asbestos claims against OCD and its subsidiaries would

substantially diminish the value of the Owens Corning enterprise and thus harm all

creditors.[21] *See* ACC and Futures Representative Brief at §II.B.

The bondholders and trade creditors have threatened claims against

OCD's subsidiaries, alleging that they are liable to these creditors under veil-

piercing theories. These creditors would seek to compel litigation to determine

whether subsidiaries are liable as alter-egos. Moreover, Debtors would need to

---

[21]    It is illogical to assume that the asbestos claimants and the Futures
Representative would support a plan excluding asbestos creditors from the
benefit of the subsidiaries' assets, but protects those same assets from
successor liability claims through a channeling injunction. Without the
approval of a supermajority of the asbestos claimants, 11 U.S.C.
§524(g)(2)(B)(ii)(IV)(bb), and a finding of adequate consideration from all
the parties protected by such an injunction, 11 U.S.C. §524(g)(4)(B)(ii),
Debtors will not obtain the benefits of a channeling injunction under 11
U.S.C. §524(g). *Cf. In re Combustion Eng'g*, 391 F.3d at 234-38 (holding
no authority under 11 U.S.C. §105 to enjoin asbestos claims and demands on
a basis other than that set forth in §524(g)). Without a channeling
injunction, even after reorganization, Debtors would have no protection from
future asbestos claims, including successor liability claims.

complete litigation, which is currently stayed, against the bank debt holders to determine the value of the subsidiary guaranties under Section 10.02 of the Credit Agreement (the Savings Clause – contractually limiting the amount of the guaranties) and the validity of the subsidiary guaranties under fraudulent conveyance law. A final resolution of all such litigation would be necessary to determine which parties have claims against each of the "separate estates."

A second wave of litigation would also entail the endless attempt to judicially determine the assets of each estate.[22] First, the myriad of unexamined transactions would have to be examined and catalogued for accounting purposes. That accounting would likely be followed by litigation initiated by the creditors affected by the characterization and value of the transfers. This could involve litigation over millions of intercompany transfers, large and small.[23] In many instances, such intercompany transfers are also subject to challenge as fraudulent conveyances. Finally, the courts would need to litigate claims involving transfers of value never accounted for, such as loans made without interest or without

---

[22] Because these issues would need to be resolved in the absence of consolidation, no bar date has been set for intercompany claims and the statute of limitations for intercompany avoidance actions has been tolled.

[23] Creditors will likely also challenge the accounting for transactions that have been classified. Characterizations of those transfers as "loans," "interest," "dividends," "capital contributions," "royalties" or something else were either made for tax purposes, or never seriously considered if there was no tax benefit or issue involved.

market interest. Chief among the unaccounted charges would be the amount to which OCD would be entitled for providing, without charge to any subsidiary, the full expense of management, accounting, legal, marketing, tax, payroll and other services throughout the entire history of the subsidiaries at issue. OCD would be entitled to payment for providing the same services after the bankruptcy filing, which claims would constitute first priority administrative expenses. If these claims need to be resolved, the prospect of emergence from bankruptcy in any reasonable timeframe would be eliminated and the costs would be staggering.

Avoiding the litigation necessary to unwind intercorporate transactions has long been recognized as a major benefit of substantive consolidation. *See In re Genesis Health Ventures, Inc.*, 266 B.R. at 619; *In re GC Cos.*, 274 B.R. 663, 673 (Bankr. D. Del. 2002); *In re Murray Indus., Inc.*, 119 B.R. 820, 831 (Bankr. M.D. Fla. 1990); *In re Standard Brands Paint Co.*, 154 B.R. 563, 571 (Bankr. C.D. Cal. 1993). In language clearly applicable here, the *Standard Brands* court described the benefits of substantive consolidation:

> [G]ranting the substantive consolidation as proposed by the debtors eliminates the classification and voting problems which would result from having to classify claims of one debtor against other debtors, whether these claims could be equitably subordinated, whether they could be avoided as preferences or fraudulent conveyances, whether they could vote and in what classes and amounts, etc. Moreover, absent substantive consolidation, one debtor might need to object to the

# EXHIBIT C

# United States Court of Appeals

*for the*

# Third Circuit

---

Case No. 04-4080

---

IN RE: OWENS CORNING, a Delaware Corporation

CREDIT SUISSE FIRST BOSTON, as Agent for the prepetition bank lenders,

*Appellant.*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE
(NO. 00-03837 JUDGE JOHN P. FULLAM)

---

## BRIEF OF APPELLANT CREDIT SUISSE FIRST BOSTON, AS AGENT AND JOINT APPENDIX
### Volume I of XX (Pages A-1–A-17)

---

MARTIN J. BIENENSTOCK
JOHN J. RAPISARDI
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
[Tel.] (212) 310-8000
[Fax] (212) 310-8007

ROY T. ENGLERT, JR.
ROBBINS, RUSSELL, ENGLERT, ORSECK
  & UNTEREINER LLP
1801 K Street, N.W., Suite 411
Washington, DC 20006
[Tel.] (202) 775-4500
[Fax] (202) 775-4510

KENNETH H. ECKSTEIN
ELLEN R. NADLER
PHILIP S. KAUFMAN
JEFFREY S. TRACHTMAN
KRAMER LEVIN NAFTALIS & FRANKEL LLP
919 Third Avenue
New York, New York 10022
[Tel.] (212) 715-9100
[Fax] (212) 715-8000

RICHARD S. COBB
REBECCA L. BUTCHER
LANDIS RATH & COBB LLP
919 Market Street, Suite 600
Wilmington, Delaware 19810
[Tel.] (302) 467-4400
[Fax] (302) 467-4450

*Attorneys for Appellant Credit Suisse First Boston, as Agent*

(d)    <u>The Debtors Are Attempting to Avoid the Guarantees</u>.

The district court believed it was "unrealistic to suppose that the banks would have an easier time collecting their claims if consolidation were denied," (JA6), because OCD was challenging the banks' guarantees in the Fraudulent Conveyance Action.  The district court was wrong for at least two reasons.

First, if OCD cannot vitiate the guarantees by actually litigating and prevailing under established, statutorily based substantive doctrines like fraudulent conveyance, it should not be able to accomplish the same thing under section 105 by relying on the convenience to OCD and the district court of *not* having to determine whether the guarantee claims are allowable. *See Combustion Eng'g,* 2004 WL 2743565, at *30.  The banks' motion to dismiss the Fraudulent Conveyance Action was fully briefed two years ago, and the banks are completely willing to defend that action to final judgment. Second, the decision fails to attain its own purpose.  Because the decision provides that the issue of the priority or security of the banks' claim must be decided at the confirmation hearing (JA7), the parties will end up litigating the Fraudulent Conveyance Action in any event to resolve whether the guarantees are valuable or voidable.